## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **HALLIBURTON ENERGY SERVICES, INC.,** | § | United States **Courts**<br>Southern District of **Texas**<br>**FILED** |
| **and DII INDUSTRIES, LLC,** | § | |
| | § | AUG 2 5 2006 |
| **Plaintiffs** | § | |
| | § | Michael N. Milby, **Clerk** |
| **v.** | § | |
| | § | |
| **NL INDUSTRIES, INC.,** | § | |
| **f/k/a National Lead Company,** | § | **CASE NO. H-05-4160** |
| **TREMONT, LLC,** | § | |
| **TRE HOLDING CORPORATION,** | § | |
| **f/k/a Bentonite Corporation,** | § | |
| **TRE MANAGEMENT COMPANY,** | § | |
| **f/k/a Baroid Management Company** | § | |
| **M-I, L.L.C., f/k/a M-I Drilling Fluids Company,** | § | |
| **MILWHITE, INC., and** | § | |
| **GEORGIA-PACIFIC CORPORATION,** | § | |
| | § | |
| **Defendants.** | § | |

## DEFENDANT MILWHITE, INC'S RESPONSE IN OPPOSITION
## TO THE TREMONT PARTIES' *SECOND* MOTION TO STAY LITIGATION

**TO THE HONORABLE U.S. DISTRICT JUDGE ROSENTHAL:**

Milwhite, Inc. ("Milwhite") now files its Response in Opposition to The *Second* Motion to

Stay Litigation filed by NL Industries, Inc., Tremont, L.L.C., TRE Holding Corporation, and TRE

Management Company ("Defendants" or "The Tremont Defendants") and would show the Court as

follows:

## Introduction And Pertinent Factual Background

1.      As this Court is well aware, this case involves Halliburton's effort to recover/recoup

its response and remediation costs to clean up or otherwise perform remedial measures with regard to

the Arkansas Site ("the Site").  The Site was used for barite mining and milling from approximately 1939 to 1977.  In 2000, Halliburton entered into an Administrative Settlement Agreement  ("the Agreement") for Interim Remedial Measures, Site Investigation, and Feasibility Study with the ADEQ. In 2003, Halliburton settled with the ADEQ and entered into the Consent Administrative Order ("Consent Order").

2.      In 2005, Halliburton filed this lawsuit, asserting (a) a claim under CERCLA Section 107 (42 U.S.C. § 9607(a)), (b) a right to contribution for each Defendant's proportionate share of its response and remediation costs under CERCLA Section 113 and (§ 9613(f)(3)(B), (c) a right to contribution under the Arkansas Remedial Action Trust Fund Act ("RATFA"), and (d) a right to recover response and remediation costs under a common law cause of action for unjust enrichment. Halliburton and DII also seek a declaratory judgment that the Defendants are liable for future response and remediation costs at the Site and that the Tremont Corporation is obligated to indemnify them.

3.      Despite the fact that this case concerns issues pertaining to the operation, ownership, and/or use of the Site ranging from approximately 30 to 67 years ago, the Tremont Parties, *for the second time*, now seek a stay of this litigation while they appeal this Court's *proper* denial of their request to transfer this case to Arkansas and stay the remainder of the case, while some parties arbitrate and an express Section 1292 appeal authorization.  As discussed and demonstrated below, there is no justification at all for a stay of this case or any appeal authorization.

2

4.      As demonstrated below, the Tremont Defendants are not entitled to a stay or any approval/authorization to appeal this Court's *proper* July 25, 2006 Order.  And Milwhite also incorporates by reference and adopts Georgia Pacific's Response.

## The Tremont Defendants Have Failed To Provide Any Justification To Stay This Case

5.      The Tremont Defendants assert that this case should be stayed while they appeal this Court's July 25, 2006 Order ("Order"), because (1) this Court was not guided by clear precedent in denying their previous venue motion, (2) this Court was not guided by clear precedent in denying their previous request for a stay, and (3) without a stay now, there is "the risk that we will have to start at square one many months or years from now . . . ."  Just a modest examination of these assertions demonstrates that they are not only unsupportable, but inevitably advanced in disregard of the record.  Accordingly, the Tremont Defendants' request, which is subject to this Court's discretion, should be denied.  <u>Wildmon v. Berwick Universal Pictures</u>, 938 F.2d 21, 25 (5th Cir. 1992) *(per curiam)*.

## This Court's Proper Denial Of The Tremont Defendants' Motion To Transfer Venue Was Well Supported By Persuasive Authority

6.      The Defendants disingenuously handpick a sound bite from this Court's venue order in claiming that there was no guiding authority for the venue ruling.  In the excerpt which the Tremont Defendants quote, it is the omitted language which conveys the thrust of this Court's reasoning and reveals the existence of guiding principles and persuasive authority.  This Court's <u>complete</u> statement was as follows:

> *Although* neither the Supreme Court nor a court of appeals has addressed this issue [whether the definition of "reside" in 1391(c) satisfies CERCLA's venue provision] in the context of CERCLA

> statute, the Supreme Court has held that § 1391(c), the general venue
> provision defining corporate "residence," should be read into specific
> venue provisions "in the absence of contrary restrictive indications in"
> the specific venue statute." (See Order, at p. 10, emphasis added).

This statement speaks for itself – this Court was clearly expressing its comfort level with existing

authority, and thereafter, an extensive discussion of parallel and persuasive authority followed. For

example, this Court acknowledged that "courts interpreting other special venue statutes have applied

*Pure Oils'* reasoning to incorporate the § 1391(c) criteria for corporate residence to special venue

provisions." (Id. at p. 12). It was also recognized that "[c]ourts have held that § 1391(c)

supplements special venue provisions in statutes addressing anti-trust, patent, civil rights, ERISA,

automobile dealers, and RICO." Id. Even further, it was noted that "[s]ituations in which courts find

that Congress intended to restrict venue under a special provision so as to preclude the application of

§ 1391(c) are rare." Id. at p. 12.

7.     Clearly, this Court was well guided in properly rejecting the Tremont Defendants'

venue challenge. And the Defendants' attempt to question the decision on false premises smacks of

impropriety.

### This Court's Proper Denial Of The Tremont Defendants' First Motion To Stay Was Amply Supported By Guiding Authority

8.     Similar to its venue issue, the Tremont Defendants select a snippet from this Court's

stay discussion in an effort to create the impression – falsely -- that this Court's decision was not

supported by authority. The piece quoted by the Tremont Defendants is as follows:

> The parties have not cited, and this Court has not found, cases
> addressing stays of litigation pending arbitration involving arbitration
> agreements that, as in the present case, anticipated and limited the
> effect of pending or completed litigation on arbitration. See Order, p.
> 28.

4

This Court's <u>complete</u> statement was:

> The parties have not cited, and this Court has not found, cases
> addressing stays of litigation pending arbitration involving arbitration
> agreements that, as in the present case, anticipated and limited the
> effect of pending or completed litigation on arbitration. **To the
> contrary, the arbitration agreements in the cases cited by the NL
> Defendants [the Tremont Defendants] do not appear to contain
> such language (citations omitted) (Order, p. 28-29), (emphasis
> added)**

9.      When adding the last sentence to provide context, it quickly becomes evident that this

Court was conveying that, when arbitration agreements like those here expressly contemplate and

limit the affect of pending or completed litigation, there is no case law support for a stay.  But when

arbitration agreements are silent on pending or completed litigation, case law authority contemplates

a stay.

10.     As this Court made clear, the parties' language *in their own Arbitration Agreements*

was decisive:

> **This court concludes that given the express language in the 2005
> and 2006 Arbitration Agreements insulating the arbitration from
> pending or completed litigation, the mere potential for conflicting
> discovery demands  and schedules is an *insufficient* basis to stay
> the entire litigation pending completion of arbitration.** <u>Id</u>. at p. 30

And this also resolves the issued raised about any scheduling conflicts between the arbitration and

this litigation, <u>i.e.</u>, the parties addressed and dealt with pending litigation, so the affect of any

scheduling conflict is minimal.  In other words, the Tremont Defendants *cannot* now backtrack from

the foresight they expressed in their own Agreements.

11.    Very simply, under the facts and the Arbitration Agreements, the absence of precedence requiring a stay was/is tantamount to authoritative support for this Court's well-reasoned and proper refusal to stay this case while just some of the parties arbitrate.

### Since This Court's Venue And Stay Decisions Were Based On Guiding And Persuasive Authority, The Tremont Defendants Have Not Attempted To And Could Not Establish The Propriety Of A Stay Pending Their Appeal

12.    As demonstrated above, this Court was well guided by authority in making proper decisions on venue and the Tremont Defendants' previous request for a stay. With that in mind, this Court may grant a stay of an interlocutory ruling pending an appeal only if the movant demonstrates (1) the likelihood of reversal on appeal, (2) irreparable harm to Movant if the stay is denied, (3) lack of substantial harm to non-Movants if the stay is granted, and (4) public interest weighs in favor of granting the stay. Wildmon, 983 F.2d at 23. The Tremont Defendants do not even address, much less demonstrate the existence of these elements. And the truth is, even if they had attempted to, they could not have met their burden. These factors will briefly be addressed in turn.

13.    As to (1), in view of the authority discussed above, there is no likelihood at all that the Fifth Circuit would reverse this Court's well-reasoned venue and stay decisions – even if permission for an interlocutory appeal could somehow be obtained. As to (2), the Tremont Defendants made no attempt to *claim* irreparable harm (*or any harm*) if a stay is denied. Also, as this Court previously recognized, the Tremont Defendants themselves acknowledged and accounted for pending litigation like this in their Arbitration Agreements. As to (3), Milwhite will be harmed because its claims and the claims against it must be resolved sooner or later – and a stay is counter to promptly proceeding toward an ultimate end and conclusion. (This is discussed further herein at p. 7). And finally, as to

(4), in view of Judge Dawson's very recent transfer of TRE's claims to this Court for consolidation, the parties' Arbitration Agreements, and this Court's clear plan for managing this litigation, the public interest would best be served by continuing without any further delay at all.

### The Requested Stay Will *Waste* Time And Judicial Resources

14.     The Tremont Defendants globally assert that unless this litigation is stayed pending their appeal, there is a risk that "we will have to start at square one many months or years from now". This belies common sense, the realities of this litigation, <u>and</u> the nature of the parties' claims.

15.     By definition, any "stay" will simply stop and stall this litigation -- it will not resolve it. This litigation concerns a Site which was in use and operation 30-67 years ago, a Consent Order which was entered over three years ago, and the claims against Milwhite are not going to magically vanish or automatically resolve. The law is clear that Milwhite *cannot* be forced to arbitrate (without an agreement), so at some point, this litigation must proceed toward an ultimate end and conclusion.

16.     Furthermore, any discovery or action which takes place now – even if a stay is ultimately ordered by the Fifth Circuit – will advance this litigation and will be discovery or action which will not be necessary later.  Proceeding now is a "can't lose proposition" and it is more sensible and efficient to proceed promptly, rather than wait-out a stay, which may jeopardize evidence which is already well-aged.

17.     For these reasons, this case must proceed; there is no reason for a stay and the Tremont Defendants have not provided one.

## This Court Should *Not* Amend Its Order To
## Facilitate Or Authorize An Immediate Appeal

18.     Under 12 U.S.C Section 1292(b), this Court must be of the opinion that the Order in question (the July 25, 2006 Order) "involves a controlling question of law as to which there is substantial for ground for difference of opinion" and "that an intermediate appeal from the Order may materially advance the ultimate termination of the litigation." Here, neither is true.

19.     The stay and venue issues/rulings are *not* controlling questions or issues of law. Both essentially affect the timing of the case, not the outcome. And separately, Judge Dawson's recent transfer of TRE's case to this Court probably moots the venue issue anyway.

20.     Just as important, as is evident from the factors and issues discussed above (supra, p. 6-7), an immediate appeal will only stall, not advance, the ultimate resolution and termination of this litigation. It makes no common sense or judicial sense to delay this case when it already involves a Site used and operated years and years ago, action by the ADEQ several years ago, and the progressively aging evidence. For all of these reasons, this Court should *not* amend its order to facilitate or authorize an immediate appeal.

## Conclusion

21.     The Tremont Defendants did not even address the four-part test outlined in the Wildmon case, but even if they had, they could not have met it. That aside, in properly rejecting the Tremont Defendants venue and stay arguments, this Court was well-steered by established principles and guiding authority. *Ironically, the absence of authority exists in relation to the Tremont Defendants' present arguments.* Furthermore, the Tremont Defendants, in their own Arbitration Agreements, specifically addressed and limited the affect of pending litigation like this. And since

the claims against Milwhite must proceed toward resolution at some point, a stay makes no sense at all. Lastly, in view of all of this, the venue and stay rulings/issues are not "controlling" or outcome determinative and a stay would only stall and further delay the ultimate resolution termination of this case.

22.     For all of these reasons and those set forth and discussed above, the Tremont Defendants' Motion to Stay Litigation must be denied and this Court should *not* amend its Order to facilitate or authorize an immediate appeal.

Respectfully submitted,

By: _____

**J. DOUGLAS SUTTER**
State Bar No. 19525500
Federal ID No. 3791
**Attorney for the Defendant,
Milwhite, Inc.**

OF COUNSEL:

KELLY, SUTTER & KENDRICK, P.C.
3050 Post Oak Blvd., Suite 200
Houston, Texas  77056-6570
Telephone:     713-595-6000
Facsimile:      713-595-6001

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document along with any attachments has been served upon all persons noted in the attached Service List by way of Facsimile or United States  Mail on the 25 day of August, 2006.

J. DOUGLAS SUTTER

## SERVICE LIST

Cause No. H-05-4160, *Halliburton Energy Services, Inc., et al v. NL Industries, Inc., et al;* In the United States District Court for the Southern District of Texas, Houston Division.

**Donald Everett Godwin**
Godwin Pappas Langley
1201 Elm St Ste 1700
Dallas, TX 75270
*Via Facsimile 214-760-7332 & US Mail*

**James Edward Johanns**
Godwin Gruber, LLP
1201 Elm Street, Suite 1700
Dallas, TX 75270-2084
*Via Facsimile 214-760-7332 & US Mail*

**Duke K McCall, III**
Swidler Berlin LLP
3000 K St NW Ste 300
Washington, DC 20007
*Via Facsimile 202-424-7647 & US Mail*

**Rusty Hardin**
Rusty Hardin & Associates
1401 McKinney, Suite 2250
Houston, Texas 77010
*Facsimile: (713) 652-9800 & US Mail*

**L. Misha Preheim**
Swidler Berlin LLP
3000 K Street, NW, Ste. 300
Washington, DC 20007
*Via Facsimile 202-424-7647 & US Mail*

**Joe W Redden, Jr**
Beck Redden & Secrest
1221 McKinney Ste 4500
Houston, TX 77010-2010
*Via Facsimile 713-951-3730 & US Mail*

**Robert N. Steinwurtzel**
Swidler Berlin LLP
The Washington Harbour
3000 K Street, NW, Ste. 300
Washington, DC 20007
*Via Facsimile 202-424-7647 & US Mail*

**Darrell Scott Funk**
Looper, Reed & McGraw, P.C.
1300 Post Oak Blvd., Suite 2000
Houston, Texas 77056
*Facsimile: (713) 986-7100 & US Mail*