# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| HALLIBURTON ENERGY SERVICES, INC., *et al.*, | § § § | |
| Plaintiffs, | § § | |
| VS. | § § | CIVIL ACTION NO. H-05-4160 |
| NL INDUSTRIES, *et al.,* | § § | |
| Defendants. | § § | |

## MEMORANDUM AND ORDER

The following motions are pending:

1.  The motion filed by NL Industries, Inc., Tremont, LLC, TRE Holding Corporation, and TRE Management Company (together, the "Tremont Parties") to stay this litigation pending appeal or, alternatively, for a certification for interlocutory appeal under 28 U.S.C. § 1292(b).  (Docket Entry No. 63).

2.  The Tremont Parties' motion to transfer the crossclaims filed against them by defendants Georgia-Pacific Corporation and Milwhite, Inc. to the United States District Court for the Western District of Arkansas, or, alternatively, for partial summary judgment dismissing those claims.  (Docket Entry No. 64).

3.  The motion filed by Georgia-Pacific and Milwhite to consolidate the related case transferred from the Western District of Arkansas to this district and division.  (Docket Entry No. 109).

This court has carefully considered the motions in light of the pleadings, the record, and the applicable law.  This court denies the motion to stay and the alternative motion for certification under Section 1292(b); denies the motion to transfer; denies the motion for

partial summary judgment; and grants the motion to consolidate.[1]  The reasons are set out below.

## I.  Background

The relevant background was set out in this court's July 2006 Memorandum and Opinion and is only summarized here.  Briefly, Halliburton Energy Services, Inc. and DII Industries LLC ("Halliburton") filed this suit in 2005 after entering into an Administrative Settlement Agreement and a Consent Administrative Order with the Arkansas Department of Environmental Quality (ADEQ).  Halliburton alleged that it had spent considerable sums to investigate and remediate contamination resulting from barite mining and milling at a site in Arkansas from the 1930s to the 1970s.  Halliburton sued NL Industries, Inc. (f/k/a National Lead Company), Tremont LLC, TRE Holding Company (f/k/a Bentonite Corporation), and TRE Management Company (f/k/a Baroid Management Company) (together, the "Tremont Parties") as prior owners and operators of the site when hazardous substances were released or as successors-in-interest to owners or operators.  Halliburton also sued Georgia-Pacific Corporation, which owned property and mineral interests at the site, and Milwhite Inc., a past owner and operator of the site.  Halliburton asserted cost recovery and contribution claims under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. §§ 9607(a) and 9613(f)(3)(B), contribution claims

---

[1]  Halliburton has also filed a motion for leave to file a supplemental report relating to proposed discovery.  (Docket Entry No. 98).  Milwhite objects to one footnote in the report that characterizes the discovery if the Tremont Parties' motion for partial summary judgment was granted.  (Docket Entry No. 102).  That objection is moot.  The motion for leave is granted.

under the Arkansas Remedial Action Trust Fund (RAFTA), ARK. CODE ANN. §§ 8-7-503 and 520, and a right to recover response and remediation costs under a state common-law unjust enrichment cause of action. Halliburton also sought a declaratory judgment that the defendants were liable for future response and remediation costs at the site and that the Tremont Corporation had an indemnification obligation under the terms used to restructure its predecessor-in-interest. Georgia-Pacific and Milwhite counterclaimed against Halliburton and crossclaimed against each other and the codefendant Tremont Parties for contribution and indemnity.

On December 27, 2005, a few weeks after this lawsuit was filed, TRE Management Company—which was also a party to the 2000 Administrative Settlement Agreement and the 2003 Consent Administrative Order—sued Georgia-Pacific in the federal district court for the Western District of Arkansas, where the site is located. In that suit, TRE Management sought contribution under CERCLA and RATFA for Georgia-Pacific's "proportionate share of all costs and expenses TRE Management has incurred and will continue to incur in performing removal actions and remedial actions at the Site." (Docket Entry No. 38, Ex. E at 7–8).

In April 2005, before either the Texas or Arkansas lawsuit was filed, TRE Management Company and Halliburton entered into a Cost Sharing, Cooperation, and Final Allocation Process Agreement (the "2005 Cost Sharing Agreement"). This 2005 Cost Sharing Agreement set out a procedure for the parties to reach a "Final Allocation" of "their and others' respective shares of such past, present, and future costs, expenses, liabilities,

settlements, recoveries, or unpaid shares relating to the Site," by agreement or by binding arbitration. The 2005 Cost Sharing Agreement recognized that there could both be arbitration among the signatories to resolve contribution disputes and contribution litigation involving nonsignatories. The 2005 Agreement limited the impact of any such litigation on the arbitration. The Agreement set out limits on the admissibility in arbitration of any "order, judgment, decree, or decision of any court in any contribution litigation under CERCLA or RATFA involving one or more Parties to this Agreement that allocates to the Parties responsibility, fair share, or liability relating to the Site." Under the Agreement, the result of such contribution litigation

> shall be ineffective, invalid, and of no force and effect as between the Parties and shall not be used or admissible as evidence in the Final Allocation Process by any Party or against any Party for any purpose other than establishing the amount of liability that has been finally allocated to non-Parties. All allocation of responsibility, fair share, or liability relating to the Site as between the Parties, and all issues or disputes between the Parties relating to whether a cost or expense is a Shared Cost, the reasonableness of any cost or expense to be allocated in the Final Allocation, and the allocability or collectibility of any cost or expenses under CERCLA or RATFA, shall be determined in the Final Allocation Process pursuant to this Agreement without reference to, or consideration of, any arguments made or conclusions reached in any such contribution litigation.

(Docket Entry No. 38, Ex. C at 10–11). Although the results of litigation cannot be used in an arbitration, the results of the arbitration are admissible in litigation.

In March 2006, after this lawsuit and the Arkansas lawsuit had been filed, Halliburton entered into an agreement expanding the entities included in the Tremont Parties agreeing

to arbitrate their disputes over the allocation of response and remediation costs at the site. In this 2006 Arbitration Agreement, the parties agreed to "resolve through binding arbitration all claims between them related to the allocation of response and remediation costs incurred or to be incurred at the Site including the claims that have been asserted in the Texas Case or such claims that may be asserted in the Arkansas Case." (Docket Entry No. 38, Ex. D at 2). The arbitration was to be conducted in accordance with the relevant provisions of the 2005 Cost Sharing Agreement, including the provisions limiting the impact of related contribution litigation. (*Id.*).

The 2006 Arbitration Agreement included a provision for seeking a stay of this lawsuit. The provision stated:

> Within ten (10) days of the Initial Effective Date, Halliburton and DII shall file in the Texas Case such papers, including this Agreement and the Allocation Agreement, as may be necessary to seek a *stay of all claims asserted between the Parties to this Agreement in the Texas Case*. In the event that the requested stay is not entered in the Texas Case, then this Agreement shall be terminated and Halliburton and DII may proceed with the litigation in the Texas Case. Notwithstanding the provision in this Agreement that Halliburton and DII have the obligation to seek a stay in the Texas Case, NL, Tremont, TRE Holding, and TRE Management, are not waiving, and are specifically preserving their right to contest jurisdiction and venue over NL, Tremont, TRE Holding, and TRE Management in the Texas Case.

(Docket Entry No. 33, Ex. A, ¶ 2) (emphasis added).

Halliburton moved to stay the litigation of its claims against the Tremont Parties in favor of arbitration under the 2005 Cost Sharing Agreement and the 2006 Arbitration

Agreement. (Docket Entry No. 33). The Tremont Parties asked this court to stay all the claims in the litigation pending the arbitration with Halliburton, including the claims involving nonparties that could not be compelled to arbitration. Georgia-Pacific and Milwhite, who are not parties to the arbitration agreements, did not object to a stay limited to the claims between Halliburton and the Tremont Parties, but did object to a stay of the entire suit. (Docket Entry Nos. 41, 47). Halliburton objected to staying any claims that were not subject to the arbitration agreements. The Tremont Parties did not then, and do not now, assert that the claims involving the nonsignatories, Georgia-Pacific and Milwhite, should have been compelled to arbitration. The Tremont Parties acknowledged that those claims are outside the arbitration agreement. The Tremont Parties nonetheless moved to stay the litigation of those claims pending the arbitration among those parties signing the agreement.

In July 2006, this court issued a Memorandum and Opinion staying this litigation as to those claims covered by the arbitration agreement. This court denied the motion to stay as to claims that it determined were not "referable to arbitration" under the written arbitration agreement. The effect of that ruling was to stay the litigation as to the claims Halliburton asserted against the Tremont Parties for cost recovery and contribution while those claims were arbitrated. Those claims were clearly within the arbitration agreement Halliburton and the Tremont Parties signed, making a stay of the litigation mandatory under Section 3 of the Federal Arbitration Act, 19 U.S.C. § 3. The ruling did not stay the litigation as to the claims against and by the nonsignatories to the arbitration agreement. Specifically, this court denied the Tremont Parties' motion to stay the litigation as to the claims for contribution asserted

6

by Halliburton against Georgia-Pacific and Milwhite; the counterclaims asserted against Halliburton by Georgia-Pacific and Milwhite for contribution; and the crossclaims for contribution and indemnity asserted by Georgia-Pacific and Milwhite against the Tremont Parties and for contribution against each other.  (Docket Entry No. 61).

The Tremont Parties have moved under Section 16 of the Federal Arbitration Act, 9 U.S.C. § 16, to stay this litigation during the appeal to the Fifth Circuit of this court's July 2006 ruling staying some, but not all, of the claims in this lawsuit pending the arbitration. (Docket Entry No. 61).  Alternatively, the Tremont Parties ask this court to certify the denial of the stay and the ruling on the venue issue for an interlocutory appeal under 28 U.S.C. § 1292(b).  (Docket Entry No. 63).  Halliburton, Georgia-Pacific, and Milwhite oppose the motions.  (Docket Entry Nos. 76, 81, 83).

The Tremont Parties have also moved to transfer the Georgia-Pacific and Milwhite crossclaims against them to the federal district court in the Western District of Arkansas, or in the alternative, for partial summary judgment on Georgia-Pacific and Milwhite's crossclaims.  (Docket Entry No. 64).  Halliburton, Georgia-Pacific, and Milwhite oppose both the motion to transfer and the motion for partial summary judgment.  (Docket Entry Nos. 78, 80, 84).

Finally, Georgia-Pacific has moved to consolidate with this case the suit filed against them by TRE Management in the Western District of Arkansas in 2005, Civil Action No. H-06-3504.  (Docket Entry No. 109).  The Arkansas court transferred that case to this court under 28 U.S.C. § 1404(a).  Halliburton and Milwhite have joined in the motion to

consolidate.  (Docket Entry Nos. 113, 115).  The Tremont Parties oppose the consolidation. (Docket Entry No. 116).

These motions and responses are analyzed below.

## I.  The Motion to Stay Pending Appeal

### A.  Section 16 of the FAA

Section 16(a)(1)(A) of the Federal Arbitration Act provides for an interlocutory appeal from an order "refusing a stay of any action under section 3" of the FAA.  Section 3 requires a stay of litigation on "any issue referable to arbitration under an agreement in writing for such arbitration."  If a stay of all or some of the claims asserted in litigation is denied because those claims are not "referable" to arbitration under a written agreement, the stay is not mandatory and its denial is not subject to interlocutory appeal under Section 16(a)(1)(A). *See Adams v. Georgia Gulf Corp.*, 237 F.3d 538 (5th Cir. 2001) (holding that to invoke jurisdiction under Section 16, the mandatory stay provision of Section 3 must apply); *White v. KPMG LLP*, 180 Fed. Appx. 498 (5th Cir. 2006) (holding that if a party is not entitled to a mandatory stay under Section 3, there is no basis for an interlocutory appeal under Section 16 because the denial of a discretionary stay is a nonappealable order).

This court found that the contribution claims asserted by a signatory—Halliburton—against two nonsignatories—Georgia-Pacific and Milwhite—and the contribution counterclaims and crossclaims by the two nonsignatories against the signatories—Halliburton and the Tremont Parties—were not "referable to arbitration" under the written agreement between the Tremont Parties and Halliburton.  This court issued a

8

mandatory stay as to the claims between Halliburton and the Tremont Parties because those claims were "referable to arbitration" under the parties' written agreement. This court found, however, that the claims asserted by Halliburton against Georgia-Pacific and Milwhite, the counterclaims asserted by Georgia-Pacific and Milwhite against Halliburton, and the crossclaims asserted by Georgia-Pacific and Milwhite against each other and against the Tremont Parties were not "referable to arbitration" and not subject to a mandatory stay. This court also concluded that a discretionary stay should not issue.

In their motion to stay pending the appeal from the denial of the stay of the entire litigation, the Tremont Parties argue that the claims remaining in the litigation, particularly the crossclaims by Georgia-Pacific and Milwhite, are "referable to arbitration" under the agreement between the Tremont Parties and Halliburton, making a stay of the litigation as to those claims mandatory under Section 3 of the FAA. The Tremont Parties do not assert that those claims may be compelled to arbitration under Section 4.

The Fifth Circuit has noted that generally, the mandatory stay provision of the FAA does not apply to those who are bound by a written arbitration agreement. *See Adams v. Georgia Gulf Corp.*, 237 F.3d at 540. In *Adams*, the court recognized that "the clarity of this rule denying the applicability of the mandatory stay provision to non-parties has been muddied" by recent cases. The court summarized these recent precedents:

> In *Harvey v. Joyce*, 199 F.3d 790 (5th Cir.2000) and *Subway Equip. Leasing Corp. v. Forte*, 169 F.3d 324 (5th Cir.1999), we applied the stay provision to non-parties because the issues presented in the nonparty-party litigation if litigated would have rendered the arbitration redundant and thwarted the federal

9

> policy favoring arbitration. . . .  In *Harvey* and *Subway*, however, we were confronted with exceptional circumstances. In *Harvey*, the parties to the arbitration agreement were all shareholders in a company, CTC, the non-party to the agreement. Joyce, one of the parties to the agreement, had been named along with CTC as a defendant.  The allegations of the lawsuit against CTC were based upon actions taken by Joyce on behalf of CTC. . . .  As a result, we found that allowing litigation to proceed could have "a critical impact in the Joyce arbitration."  Similarly, in *Subway*, we found that because the issues to be litigated by the non-parties were identical to the issues to be arbitrated by the parties allowing the litigation to proceed would harm the parties' rights to arbitrate.  Because of these exceptional circumstances, we diverged from our general rule requiring party status for the mandatory stay provision to apply, thereby creating tension in our case law.

*Id.* at 540–41 (internal citations omitted).  In *Adams*, the court held that because the nonsignatory did not show that allowing the litigation to proceed would impede the arbitration, there were no "exceptional circumstances" present that would allow the nonsignatory to obtain a stay of the litigation under Section 3.  The stay the nonsignatory sought was discretionary, not mandatory, and its denial was an interlocutory order over which the appellate court lacked jurisdiction.  *Id*.  In *Waste Management, Inc v. Residuos Industrials Multiquam*, 372 F.3d 339 (5th Cir. 2004), the Fifth Circuit synthesized the precedents identifying the factors for deciding when a nonsignatory can obtain a mandatory stay of litigation under Section 3 pending arbitration:

> [S]everal factors emerge for invoking § 3 on the application of a non-signatory: 1) the arbitrated and litigated disputes must involve the same operative facts; 2) the claims asserted in the arbitration and litigation must be 'inherently inseparable'; and 3) the litigation must have a 'critical impact' on the arbitration.

*Id.* at 343.

The Fifth Circuit has recognized that under its precedents, when an interlocutory appeal is taken from a denial of a motion to stay litigation pending arbitration, appellate jurisdiction under Section 16(1)(A) turns on whether the stay was mandatory under Section 3. That is, whether there is an interlocutory appeal available turns on the merits of the claims that are the subject of the appeal. *Waste Management, Inc. v. Residuous Industriales*, 372 F.3d at 343 ("The key issue in evaluating our jurisdiction over this appeal—whether the [plaintiff's] claims against [the defendant] are 'referable to arbitration' such that a stay of litigation under § 3 would be mandated—is therefore identical to the substance of this interlocutory appeal; that is, we must determine whether [the plaintiff's] claims against [the defendant] are covered by the arbitration agreement that covers its claims against [the signatory to the arbitration agreement]." The Fifth Circuit observed that this was "somewhat of a Catch-22: we could not reject jurisdiction after finding that RIMSA is entitled to a stay, or find that no stay is warranted while maintaining jurisdiction. We must thus either reverse the district court or dismiss for want of jurisdiction after having reached the substance of the appeal." *Id*. at 343, n.5. The same circularity applies here. The Tremont Parties are not entitled to a stay pending appeal unless they are entitled to an interlocutory appeal under Section 16 (on section 1292(b), discussed below). They are not entitled to an interlocutory appeal under Section 16 as to the claims that this court declined to stay are "referable to arbitration" under Section 3, making the stay mandatory. The Tremont Parties' motion for

a stay pending appeal is essentially a motion for reconsideration of this court's denial of the motion to stay.

The Tenth Circuit and the D.C. Circuit have avoided this "Catch-22" by retaining the bright-line approach that the Fifth Circuit generally followed before *Harvey* and *Subway*. In *In re Universal Service Fund Telephone Billing Practice Litigation v. Sprint Communications Co. L.P.*, 428 F.3d 940 (10th Cir. 2005), the district court declined to stay the litigation of claims between a signatory and a nonsignatory because those claims were not "referable to arbitration *under an agreement in writing for such arbitration.*"  9 U.S.C. § 3 (emphasis added).  The appellate court held that it had no jurisdiction over the appeal from that order under Section 16 because there was no right to a stay under Section 3.  The court relied on the decision of the D.C. Circuit in *DSMC Inc. v. Convera Corp.*, 349 F.3d 679 (D.C. Cir.2003).  In that case, the D.C. Circuit dismissed an interlocutory appeal in which the appellants sought review of orders denying a stay and compelling arbitration under Sections 3 and 4 of the FAA.  The appellants asserted jurisdiction by relying on equitable estoppel as a substitute for the statutory requirement of a written arbitration agreement. Focusing on the strict construction required of statutes creating interlocutory appeals and the elements of jurisdiction established in Section 16, the court held an appellant's prior reliance on a written agreement to compel arbitration as to the claims in the litigation is a necessary predicate to an interlocutory appeal under the FAA.  *Id*. at 683.  The court disagreed with the signatory's contention that the "identicality" of the issues in the litigation between a signatory and the nonsignatory and the issues in the arbitration entitled the signatory to a

12

Section 3 stay despite the absence of an arbitration agreement between them.  The court

concluded that a theory of equitable estoppel was incompatible with that jurisdictional

requirement.  *Id.* at 683.  In *DSMC*, then-Judge Roberts noted that its approach avoided the

"Catch-22" that the Fifth Circuit recognized in *Waste Management*:

> We are also cognizant that jurisdictional rules should be, to the
> extent possible, clear, predictable, bright-line rules that can be
> applied to determine jurisdiction with a fair degree of certainty
> from the outset.  Asking whether the parties are signatories to a
> written agreement to arbitrate satisfies these criteria.  On the
> other hand, the application of equitable estoppel—if permitted
> in this context—requires a multifactor factual and legal inquiry
> to determine whether the issues to be litigated by the
> non-signatory are sufficiently intertwined with the issues subject
> to arbitration.  That type of analysis, in turn, would require this
> court to delve deeply into the merits of a case before even
> deciding whether we had interlocutory appellate
> jurisdiction—an unattractive prospect.

349 F.3d at 683-84.

Applying the approach in the D.C. and the Tenth Circuit would lead to the result that

no interlocutory appeal is available under Section 16 in this case.  The Tremont Parties seek

a stay of litigation involving claims by nonsignatories because of the relationship of those

claims to the arbitration.   Under the Fifth Circuit approach, this court examines the

relationship between the claims to be litigated and the claims to be arbitrated to determine

whether a stay is mandatory under Section 3 and therefore whether an interlocutory appeal

is available under Section 16.

In *Waste Management*, a nonsignatory sought to stay litigation of claims asserted

against it by a signatory.  In this case, unlike *Waste Management*, signatories to the arbitration

13

agreement (the Tremont Parties) are seeking to invoke a Section 3 stay against nonsignatories (Georgia-Pacific and Milwhite) over the objection of another signatory (Halliburton).   In deciding  motions to compel, the courts have distinguished between allowing a nonsignatory to enforce an arbitration agreement against a signatory and allowing a signatory to enforce an arbitration agreement against a nonsignatory.   The courts have held that the principles allowing a nonsignatory to enforce an arbitration clause against a signatory may not allow a signatory to enforce arbitration against a nonsignatory.   *See, e.g., MAG Portfolio Consult, Gmbh v. Merlin Biomed Group*, LLC, 268 F.3d 58, 62 (2d Cir. 2001); *Bridas*, 345 F.3d 347, 361 (5th Cir. 2003) (recognizing that courts have compelled arbitration as to claims involving nonsignatories under contract and agency principles, but that "[i]t is more foreseeable, and thus more reasonable, that a party who has actually agreed in writing to arbitrate claims with someone might be compelled to broaden the scope of his agreement to include others" than to require a nonsignatory to arbitrate when it has not agreed to do so).

In deciding a motion to stay litigation pending arbitration as opposed to a motion to compel arbitration, however, the courts have applied similar factors when the stay is sought by a nonsignatory as to claims involving a signatory, as in *Waste Management*, or by a signatory as to claims involving a nonsignatory, as in the present case.   In *Subway Equipment Leasing v. Forte*, 169 F.3d at 329, the court considered whether a defendant who had signed an arbitration agreement with the plaintiff was entitled to a stay of litigation under Section 3 of the FAA as to the plaintiff's claims against other defendants who had no agreement to arbitrate with the plaintiff.  *Id.*  The court held that a stay of the plaintiff's claims against all

14

the defendants was proper, even as to the defendants who had not signed arbitration agreements, if litigation could not proceed on those claims without adversely affecting the signatories' right to arbitration. *Id.* (citing *Sam Reisfeld & Son Import Co. v. S.A. Eteco*, 530 F.2d 679, 681 (5th Cir. 1976) (holding that an order to stay litigation covering claims against all defendants was appropriate, even though two defendants were not parties to the arbitration agreement).

The Tremont Parties argue that a stay is mandatory under the factors set out in *Waste Management*, 372 F.3d 339.  In *Waste Management*, a signatory filed a lawsuit seeking contract damages from a nonsignatory.  The same contract damages were at issue in an arbitration between the plaintiff and another signatory to the arbitration contract.  *Id.* at 341.  The Fifth Circuit found that the signatory's claims in the litigation were so closely related to the arbitration and would have such an impact on the arbitration as to make a stay mandatory under Section 3.  First, the major operative facts underlying the signatory's claims against the nonsignatory in the litigation were identical to those underlying the signatory's claims in the arbitration.  Second, the signatory's claims in the arbitration and the litigation were inseparable because they sought to recover the same payment for a single alleged harm. Finally, allowing the litigation to proceed would "substantially impact" the arbitration because the arbitrator would be strongly influenced to follow the court's determination.  *Id.* at 345.

The present case does not present the same relationship between the arbitration and the litigation.  The liability of one potentially responsible party is not necessarily derivative of the liability of another.  Halliburton's litigation claims against Georgia-Pacific and Milwhite and

Georgia-Pacific's counterclaims and crossclaims, are not derivative of Halliburton's claims against the Tremont Parties that are the subject of the arbitration.  Halliburton has incurred and will incur response costs for which it seeks contribution from the Tremont Parties in the arbitration and from Georgia-Pacific and Milwhite in the litigation.  Halliburton's right to recover against Georgia-Pacific and Milwhite (and their right to seek contribution or indemnity from the Tremont Parties) is not derivative of Halliburton's right to recover against the Tremont Parties.

Nor are the claims asserted in the arbitration and in the litigation "inherently inseparable," although they are related.  The contamination at issue occurred over decades and involved a number of different parties with different contractual rights and obligations and different activities at and affecting the site.  In *Waste Management*, the Fifth Circuit found that "[f]undamentally, we have one dispute: Who, if anyone, should reimburse WM for the $795,000 it paid to Bethlehem (through the Letter) as a result of RIMSA's default?"  *Id.* Although this case generally involves financial responsibility for remediating contamination at a single "Superfund" site, the length of time involved and the number of parties involved defeat reduction to a single or simple dispute.  Milwhite and Georgia-Pacific's potential liability alleged by Halliburton under CERCLA, RATFA, or contracts does not require a prior finding that the Tremont Parties are, or are not, liable to Halliburton, the issue to be determined in the arbitration.

The final *Waste Management* factor is that the litigation "must have a 'critical impact' on the arbitration.  372 F.3d at 343.  The Tremont Parties argue that the continued existence

of the litigation has adversely affected the arbitration by requiring the lawyers to work on both at the same time and by injecting an adversary element into the relationship between the arbitrating parties.  If such effects of related litigation amounted to a "critical impact" on arbitration under *Waste Management*, motions to stay would always be mandatory under Section 3.  That is clearly not the law.  Although the Tremont Parties argue that the arbitration is delayed, it is proceeding and is expected to be completed this summer.  Halliburton and the Tremont Parties are adversaries in both the arbitration and the litigation; there is no basis to conclude that the continued presence of the litigation has created or so exacerbated their adversary relationship as to require a stay of litigation to preserve their ability to arbitrate.

The Tremont Parties also argue that the litigation is premature because Georgia-Pacific and Milwhite cannot proceed with their contribution crossclaims unless and until they have been required to spend money to respond to the contamination at the site.  This argument is raised in the Tremont Parties' motion for partial summary judgment dismissing the crossclaims and is addressed below in the analysis of that motion.  It does not support the issuance of a mandatory stay under Section 3.

The Tremont Parties also raise a practical aspect of this argument in support of their motion to stay the litigation pending the arbitration.  The Tremont Parties assert that the result in the arbitration will be important for the litigation and that the litigation should not proceed until the litigation is completed.  This is an argument for a discretionary stay, not a mandatory stay under Section 3.  *Harvey, Subway, Adams*, and *Waste Management* direct a district court to consider whether continued litigation is likely to have a critical impact on the arbitration

17

in deciding whether to issue a mandatory stay under Section 3.   "The question is not ultimately one of weighing potential harm to the interests of the non-signatory, but of determining whether proceeding with litigation will destroy the signatories' right to a meaningful arbitration."  *Waste Management,* 372 F.3d at 343; *see also Subway*, 169 F.3d at 329.  These cases do not direct a district court to consider the likely effect of arbitration on litigation in deciding whether a Section 3 stay should issue.  Moreover, there is no basis to find that the litigation is likely to have a "critical impact" on the arbitration, given the provision in the arbitration agreement insulating the arbitration from parallel or related litigation.  The Tremont Parties' argument that the arbitration should precede the litigation because the result of the arbitration will be important for the litigation does not support the issuance of a mandatory stay under *Waste Management* and Section 3.

The present record does not present the "exceptional circumstances" that would allow the Tremont Parties, signatories to an arbitration agreement with Halliburton, to obtain a stay of litigation involving Halliburton's claims against nonsignatories to the arbitration agreement and those nonsignatories' crossclaims against the Tremont Parties.  The claims by Halliburton against the nonsignatories, the nonsignatories' counterclaims against Halliburton, and the nonsignatories' crossclaims against each other and the Tremont Parties are not "referable to arbitration" under a written arbitration agreement.  Because a mandatory stay under Section 3 is not available, an interlocutory appeal under Section 16 is not available, and a stay pending that appeal should not issue.

The Tremont Parties' arguments as to the effect of the arbitration on the litigation have greater force as arguments in support of a discretionary stay. A district court has discretion to stay claims between nonarbitrating parties pending the outcome of the arbitration as a means of controlling the docket. *See Complaint of Hornbeck Offshore (1984) Corp.*, 981 F.2d 752, 755 (5th Cir. 1993); *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 20 at n.23 (1983). An arbitrator's finding as to the relative liability of Halliburton and the Tremont Parties for response costs may significantly impact (if not determine) the extent to which Halliburton is entitled to contribution from Georgia-Pacific and Milwhite and the extent to which they are in turn entitled to contribution from the Tremont Parties. The most extreme version of this impact would be if Halliburton is found to be entitled to payment by the Tremont Parties for all past and future financial obligation for remediating the site, which would moot Halliburton's contribution claims against Georgia-Pacific and Milwhite and their crossclaims against the Tremont Parties. The Tremont Parties ask this court to stay the litigation until the arbitration is complete on the basis that the arbitration result will provide important information for the litigation.

This court's case-management plan meets the concerns raised in the Tremont Parties' argument. The plan is carefully crafted to coordinate the litigation with the arbitration without staying all aspects of the litigation until the arbitration is completed. This court has scheduled monthly status conferences to ensure that the discovery, motions deadlines, and other litigation work do not conflict with the arbitration proceedings, to avoid the risk of inconsistent results, and to facilitate the efficient conduct of both proceedings. Discovery in

this litigation can continue and a number of legal issues can be resolved short of concluding the litigation before the arbitration has been finished.  The parties estimate that the arbitration will be completed late this summer.  This court will continue to monitor the litigation closely and frequently and to manage the discovery and other litigation work to ensure that the litigation is properly staged in relation to the arbitration.  As noted in this court's July 2006 Memorandum and Opinion, if that monitoring and management reveals that the litigation is likely to have a "critical impact" on the arbitration or that the other *Waste Management* factors are met, this court would then issue a stay under Section 3.  On the present record, however, the monitoring and case-management work done to date do not show that the Section 3 factors are met or that a discretionary stay is warranted.

A discretionary stay is denied.  Because a denial of a discretionary stay does not provide a basis for an appeal under Section 16, the motion to stay pending the appeal is also denied.

### B.    The Motion for Certification under 28 U.S.C. § 1292(b)

If a Section 16 interlocutory appeal is not available, as this court has concluded, the Tremont Parties alternatively ask for a certification for an interlocutory appeal under 28 U.S.C. § 1292(b).  A district court may issue such a certification when "there is substantial ground for difference of opinion and [] an immediate appeal from the order may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b).

"Section 1292(b) appeals are exceptional.  They are permitted only when there is a substantial difference of opinion about a controlling question of law and the resolution of that

question will materially advance, not retard, ultimate termination of the litigation." *Clark-Dietz & Assocs. v. Basic Constr. Co.*, 702 F.2d 67, 69 (5th Cir. 1983). "[F]act-review questions" are "inappropriate for § 1292(b) review." *Id.* "Finally, there must be substantial ground for difference of opinion over the controlling question of law for certification under § 1292(b)." *Ryan v. Flowserve Corp.*, 44 F. Supp. 2d 718, 723 (N.D. Tex. 2006). "But simply because a court is the first to rule on a question or counsel disagrees on applicable precedent does not qualify the issue as one over which there is substantial disagreement." *Id.* (citing 4 Am. Jur. 2d *Appellate Review* § 128 (2005)). A "key concern consistently underlying § 1292(b) decisions is whether permitting an interlocutory appeal will 'speed up the litigation.'" *Id.* (citing *Ahrenholz v. Bd. of Trustees of the Univ. of Ill.*, 219 F.3d 674, 676 (7th Cir.2000)).

The criteria for certification under Section 1292(b) are not met on this record. The record does not provide a basis for concluding that this court's denial of the stay raised a substantial difference of opinion about a controlling question of law. The law in this circuit on when a mandatory stay must issue and a discretionary stay may issue is established. 9 U.S.C. § 3; *Waste Management*, 372 F.3d at 339. This court issued a mandatory stay of litigation as to claims that were referable to arbitration under a written agreement and found that a stay was not mandatory for claims that were not referable to arbitration. (Docket Entry No. 61 at 27–28). This court denied a discretionary stay of the litigation as to the claims that were not referable to arbitration, finding that they could efficiently and fairly proceed under this court's careful, frequent, and detailed monitoring and case management. (*Id*. at 30–31).

21

Such a fact-specific exercise of judicial discretion does not rest on a controlling issue of law as to which there is a substantial difference of opinion.

This court's ruling on venue also did not raise a substantial difference of opinion about a controlling question of law. Although this court recognized that no authority directly applied 28 U.S.C. § 1391(c) in the context of CERCLA's restrictive venue provisions, courts have analyzed similar venue provisions in other contexts. (Docket Entry No. 61 at 11–13). This court applied settled law on restricted venue provisions and venue generally.

Nor does this court find that a Section 1292(b) appeal will speed up the litigation. The arbitration is, as noted, expected to conclude this summer. This court has implemented a careful case-management plan to ensure that the continued litigation of claims related to pending arbitration but not referable to that arbitration will not conflict with the arbitration and to avoid inconsistencies and inefficiencies. Certification for interlocutory appeal and a stay pending that appeal will delay, not advance, this litigation. The motion for certification for interlocutory appeal is denied.

## III.   The Motion for Partial Summary Judgment

The Tremont Parties move for summary judgment dismissing the crossclaims asserted against them by Georgia-Pacific and Milwhite. (Docket Entry No. 64 at 7). Georgia-Pacific and Milwhite filed amended crossclaims clarifying their grounds for seeking contribution under Section 113(f)(1) of CERCLA; contribution under RATFA; and indemnification under contractual agreements. (Docket Entry No. 96 at 3–4; Docket Entry No. 101 at 12–15).

### A.   The Legal Standard for Summary Judgment

22

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56. Rule 56(c) requires the moving party to "inform[ ] the district court of the basis for its motion, and identify[ ] those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Stahl v. Novartis Pharms. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002). If the burden of proof at trial lies with the nonmoving party, the movant may either (1) submit evidentiary documents that negate the existence of some material element of the opponent's claim or defense, or (2) if the crucial issue is one on which the opponent will bear the ultimate burden of proof at trial, demonstrate the evidence in the record insufficiently supports an essential element or claim. *Celotex*, 477 U.S. at 330. The party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, but need not negate the elements of the nonmovant's case. *Bourdeaux v. Swift Transp. Co., Inc.,* 402 F.3d 536, 540 (5th Cir. 2005). "An issue is material if its resolution could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003) (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)). If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the nonmovant's response. *Baton Rouge Oil & Chem. Workers Union v. ExxonMobil Corp.*, 289 F.3d 373, 375 (5th Cir. 2002).

When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a motion for summary judgment by resting on the mere allegations of its pleadings.

The nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim. *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 305 (5th Cir. 2004). The nonmovant must do more than show that there is some metaphysical doubt as to the material facts. *Armstrong v. Am. Home Shield Corp.,* 333 F.3d 566, 568 (5th Cir. 2003). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Anderson,* 477 U.S. at 255; *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir. 2002).

### B.    The CERCLA Contribution Claims

Georgia-Pacific and Milwhite allege that as potentially responsible parties (PRPs) under Section 107(a) of CERCLA, they are entitled to crossclaim against the codefendant Tremont Parties for contribution under Section 113(f)(1) of that statute. (Docket Entry No. 96 at 2; Docket Entry No. 100 at 13). The Tremont Parties have moved for partial summary judgment on these crossclaims and argue that recent Supreme Court precedent blocks the Section 113(f)(1) contribution claims. (Docket Entry No. 64 at 9–10).[2]

Congress enacted CERCLA in 1980 in response to environmental and health dangers posed by property contamination from hazardous substances. *United States v. Bestfoods*, 524 U.S. 51, 55 (1998). As amended by the Superfund Amendments and Reauthorization Act of 1986 (SARA), Pub. L. No. 99- 499, 100 Stat. 1613, CERCLA provides several alternative

---

[2]   The Tremont Parties also sought partial summary judgment as to Georgia-Pacific and Milwhite's Section 113(f)(2) claims. (Docket Entry No. 64 at 9–10). Georgia-Pacific and Milwhite no longer assert Section 113(f)(2) contribution in the amended crossclaims.

legal means for cleaning up contaminated property.  Sections 104 and 106 provide for federal abatement and enforcement actions to compel cleanup of contaminated sites.  *See* 42 U.S.C. §§ 9604, 9606(a).  Section 107(a) identifies four categories of "[c]overed persons" who may be liable for cleanup costs associated with the release or threatened release of hazardous substances.  *See* 42 U.S.C. § 9607(a).  Covered persons are defined as: (1) owners and operators of facilities at which hazardous substances are located; (2) past owners and operators of such facilities at the time that disposal of hazardous substances occurred; (3) persons who arranged for disposal or treatment of hazardous substances; and (4) certain transporters of hazardous substances.  *See* 42 U.S.C. § 9607(a)(1)-(4).  Unless they can invoke a statutory defense or exclusion, covered persons are liable for, *inter alia*, "all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan," and "any other necessary costs of response incurred by any other person consistent with the national contingency plan," 42 U.S.C. § 9607(a).  Section 113 was added in 1986 as part of SARA.  It contains a subsection entitled "Contribution," which states:

> Any person may seek contribution from any other person who is liable or potentially liable under [§ 107(a)], during or following any civil action under [§§ 106 or 107(a)]. . . .  In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate.  Nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under [§§ 106 or 107].

42 U.S.C. § 9613(f)(1).

Section 113(f)(3)(1) allows "persons who have undertaken efforts to clean up properties contaminated by hazardous substances to seek contribution from other liable parties under CERCLA." *Vine St. L.L.C. v. Keeling*, 362 F. Supp. 2d 757, 760 (E.D. Tex. 2005) (citing *Cooper Indus. v. Availl Sers.*, 543 U.S. 157, 159 (2005)). The Section 113(f)(1) remedy is available only for "jointly and severally liable parties for an appropriate division of the payment one of them has been compelled to make." *Vine St.*, 362 F. Supp. 2d at 761, citing *Akzo Coatings, Inc. v. Aigner Corp.*, 30 F.3d 761, 764 (7th Cir. 1994). "Section 113(f)(1) is 'aimed at promoting equitable allocations of financial responsibility' by authorizing potentially responsible parties in pending or completed CERCLA actions 'to initiate private actions for full or partial contribution' from other potentially responsible parties 'by way of impleader or an independent action.'" *Id.* (citing *In re Hemingway Transp., Inc.*, 993 F.2d 915, 922 (1st Cir. 1993)).

The Supreme Court recently clarified in *Cooper Industries* that a Section 113(f)(1) contribution claim is unavailable to a party who has not been sued under Sections 106 or 107 of CERCLA.

> Section 113(f)(1) specifies that a party may obtain contribution "during or following any civil action" under CERCLA § 106 or § 107(a). The issue we must decide is whether a private party who has not been sued under § 106 or § 107(a) may nevertheless obtain contribution under § 113(f)(1) from other liable parties. We hold that it may not.

*Cooper Industries*, 543 U.S. at 160–61.

Halliburton sued Georgia-Pacific and Milwhite for cost recovery and contribution under Section 107(a) of CERCLA. (Docket Entry No. 1 at 9). Because Georgia-Pacific and Milwhite have been sued under Section 107(a), *Cooper Industries* does not preclude them from seeking contribution under Section 113(f)(1). The Tremont Parties assert that in *Cooper Industries*, the Supreme Court held that a person sued under Section 106 or 107 may only assert a Section 113(f)(1) claim during or following "a specified civil action by a governmental entity." (Docket Entry No. 64 at 10). The Supreme Court expressly refused to decide whether a PRP could sue another PRP under Section 107(a). *Cooper Industries*, 543 U.S. 159 ("The Court declines to address in the first instance Aviall's claim that it may recover costs under § 107(a)(4)(B) even though it is a PRP."). The circuit courts have divided on that issue since *Cooper Industries* was decided. *Compare Atlantic Research Corp. v. United States*, 459 F.3d 827, 832 (8th Cir. 2006) and *Consolidated Edison Co. of New York, Inc. v. UGI Utilities, Inc.*, 423 F.3d 90, 99 (2d Cir. 2005) (holding that a potentially responsible party may bring an action against another potentially responsible party under Section 107(a)) *with E.I. DuPont De Nemours & Co. v. United States*, 460 F.3d 515, 532 (3d Cir.2006) (holding that a potentially responsible party may not sue another potentially responsible party for cost recovery or contribution under Section 107(a) or federal common law.). The Supreme Court has granted a writ of *certiorari* to resolve whether a PRP may sue another PRP for cost recovery or contribution under Section 107(a). *United States v. Atlantic Research Corp.*, No. 06-562, 2007 WL 124673 (Jan. 19, 2007).

27

In *Cooper Industries*, the Supreme Court found that a section 113(f)(1) action must be brought during or following a Section 106 or Section 107 action.  Because Milwhite and Georgia-Pacific are defendants in a Section 107 action, their crossclaims are not precluded under *Cooper Industries*.  The motion for partial summary judgment is denied.

### C.      The RATFA Claims

Georgia-Pacific and Milwhite crossclaimed for contribution under RATFA, ARK. CODE ANN. § 8-7-503 *et seq*.  (Docket Entry No. 96 at 3; Docket Entry No. 100 at 14).  The Tremont Parties move for partial summary judgment on the ground that the crossclaims fail the statutory requirements for seeking contribution under RAFTA because the crossclaimants have not been ordered to cleanup waste or been party to a settlement.  (Docket Entry No. 64 at 11).

In *Reynolds Metals Co. v. Ark. Power & Light Co.*, 920 F. Supp. 991 (E.D. Ark. 1996), the Eastern District of Arkansas concluded that private contribution actions under RATFA, ARK. CODE ANN. §§ 8-7-520(a) and (b), are available only after an action against the party seeking contribution by the Arkansas Department of Pollution Control and Ecology (ADPCE). Section 8-7-520(a) provides:

> Any person who has undertaken or is undertaking remedial action at a hazardous substance site in response to an administrative or judicial order initiated against such person pursuant to § 8-7-508 or § 8-7-523(d) may obtain contribution from any other person who is liable for such hazardous substance site.

ARK. CODE ANN. § 8-7-520(a).  "The first of the RATFA provisions referenced in § 520(a),

namely § 508(a)(1) and § 508(c), authorize the Arkansas Department of Pollution Control and

Ecology (ADPCE) and the Director of the ADPCE, but no one else, to institute remedial

actions for which contribution is available."  *Reynolds*, 920 F. Supp. at 998.  "The second

RATFA provision referenced in § 520(a), namely § 523(d), likewise limits the availability of

any RATFA contribution remedy to response costs incurred pursuant to remedial action

required by the ADPCE."  *Id.*  Georgia-Pacific and Milwhite have not pleaded or presented

summary judgment evidence that they have been subject to a Section 508 or 520 action

initiated by the ADPCE.  The Section 8-7-520(a) RATFA private contribution cause of action

is unavailable to Georgia-Pacific or Milwhite.

Section 8-7-520(b) of the Arkansas Code provides:

> Any person who has resolved all or a portion of his liability for
> a hazardous substance site by undertaking remedial action
> pursuant to an administrative or judicially approved settlement
> may obtain contribution from any person who is liable for such
> hazardous substance site and is not a party to the settlement.

ARK. CODE ANN. § 8-7-520(a).  The *Reynolds* court carefully analyzed Arkansas Supreme

Court precedent and the statute's legislative history, concluding that "any RATFA

contribution action, including one brought under § 520(b), will be available only when a

private person has incurred response costs that resulted from the ADPCE's efforts to enforce

RATFA."  *Id.*  Georgia-Pacific and Milwhite have not pleaded or presented summary

judgment evidence that they have been incurred response costs that resulted from the

ADPCE's enforcement efforts.  The motion for partial summary judgment as to Georgia-Pacific and Milwhite's RATFA claims is granted.

### B.    The Contractual Indemnification Claims

Georgia-Pacific and Milwhite have alleged that they had contracts with predecessors-in-interest of the Tremont Parties with indemnification provisions.  (Docket Entry No. 96 at 3–4, Docket Entry No. 101 at 14–15).  The Tremont Parties move for partial summary judgment based on the indemnification clause in one contract.  (Docket Entry No. 64 at 12–13).  Georgia-Pacific and Milwhite have supplemented the record with other contracts that contain indemnification provisions alleged to provide a basis to seek contribution.  (Docket Entry No. 78, at 12, Exs. 2, 3).  This evidence precludes summary judgment as to the claim based on contractual indemnity provisions.

### III.   The Motion to Transfer and the Motion to Consolidate

The Tremont Parties have moved under 28 U.S.C. § 1404(a) to transfer the Georgia-Pacific and Milwhite crossclaims to the federal district court for the Western District of Arkansas.  (Docket Entry No. 64).  Halliburton, Georgia-Pacific, and Milwhite oppose the motion.  (Docket Entry No. 78, 80, 84).  When the Tremont Parties filed their motion to transfer, the related case filed by TRE Management against Georgia-Pacific and Milwhite was pending in the Western District of Arkansas.  A week after the Tremont Parties filed the motion to transfer, the Western District of Arkansas transferred the related case to this district and division so that it could be consolidated or coordinated with the case pending in this court. (Docket Entry No. 78, Ex. C; Docket Entry No. 80 at 4; Docket Entry No. 109, Ex. A).  The

Tremont Parties oppose the consolidation and ask this court to transfer both cases back to the Western District of Arkansas.  (Docket Entry No. 112).

The Tremont Parties' opposition to consolidating the recently transferred Arkansas case with the present case was based on the pending motions in the present case, including the motion for a stay of the entire case.  The Tremont Parties asserted that they did not oppose a stay of the related case transferred from Arkansas as well.  (Docket Entry No. 112 at 2).  This court has decided the pending motions and again denied a stay.

The Tremont Parties argue that this case should proceed in Arkansas, despite the decision of the Arkansas court to transfer its case to this court.  The Tremont Parties argue that the state government officials who compelled the cleanup will be key witnesses and are in Arkansas. (Docket Entry No. 64 at 1).  The Tremont Parties identify categories of potential witnesses who may be in Arkansas, including ADEQ employees, government employees, former employees of various owners and operators who worked at the site, and expert witnesses.  (*Id*. at 3-4).  The Tremont Parties also argue that records are located in Arkansas, including ADEQ records, property records, and Georgia-Pacific and Milwhite records.  (*Id*. at 4).

In response, the opposing parties emphasize the ruling of the Arkansas court transferring its case to this court, finding that the two cases involved "the same parties and issues" and should proceed in the Southern District of Texas.  (Docket Entry No. 109, Ex. A at 1).  Transferring both cases would be inconsistent with the findings of the Arkansas court; transferring only this case and not the recently transferred case would result in piecemeal

31

litigation.  (Docket Entry No. 78 at 4–5).  The opposing parties argue that the Tremont Parties have failed to make the showing necessary for transfer under 28 U.S.C. § 1404(a).  (Docket Entry No. 80 at 6–8; Docket Entry No. 84 at 4–6).

Section 1404(a) allows district courts to transfer an action to another proper venue "for the convenience of parties and witnesses" if such a transfer will be "in the interest of justice." 28 U.S.C. § 1404(a) (2006).  "The determination of 'convenience' turns on a number of private and public factors, none of which are given dispositive weight."  *In re Volkswagen of America, Inc.*, 371 F.3d 201, 203 (5th Cir. 2004).  These factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive; (5) the administrative difficulties flowing from court congestion; (6) the local interest in having localized interests decided at home; (7) the familiarity of the forum with the law that will govern the case; and (8) the avoidance of unnecessary problems of conflict of laws and of the application of foreign law.  *Id.*  The party seeking the transfer bears the burden of demonstrating why this court should use its discretion to transfer the action.  *See Peteet v. Dow Chemical Co.*, 868 F.2d 1428, 1436 (5th Cir.1989); *Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir. 1966).

The Tremont Parties have not met their burden under Section 1404(a).  The availability and convenience of nonparty witnesses is one of the most important factors in the Section 1404 analysis.  *LeBouef v. Gulf Operators, Inc.*, 20 F.Supp.2d 1057, 1060 (S.D.Tex.1998) (citing 15 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, FEDERAL PRACTICE &

PROCEDURE § 3851, at 415 (1986)).  The Tremont Parties argue generally that there are categories of  witnesses in Arkansas, including nonparty witnesses, but do not provide the specifics necessary to support transfer on this basis.  *See LeBouef v. Gulf Operators, Inc.*, 20 F. Supp. 2d 1057, 1060 (S.D. Tex. 1998) (denying transfer where moving party "provided neither the names of its potential witnesses nor the substance of their anticipated testimony"); *Darchuk v. Kellwood Co.*, 715 F. Supp. 1438, 1439-40 (E.D. Ark. 1988) (names of witnesses and content of testimony important to determine appropriateness of transfer).  The records and documents are located in a variety of places and most are now in electronic form.  The Tremont Parties have not identified or presented specific information about other factors that would support transfer under Section 1404(a).  The motion to transfer is denied.  (Docket Entry No. 64).  The motion to consolidate is granted.  (Docket Entry No. 109).

## IV.    Conclusion

The Tremont Parties' motion to stay this litigation pending appeal or to certify this case for interlocutory appeal is denied.  (Docket Entry No. 63).  The Tremont Parties' motion for partial summary judgment is granted as to Georgia-Pacific and Milwhite's claims for contribution under RATFA and otherwise denied.  (Docket Entry No. 64).  The Tremont Parties' motion to transfer is denied.  (Docket Entry No. 64).  Georgia-Pacific's motion to consolidate this case with the related case recently transferred from the Western District of

Arkansas, Civil Action No. H-06-3504, *TRE Management v. Georgia-Pacific et al.*, is granted.  (Docket Entry No. 109).[3]

SIGNED on January 26, 2007, at Houston, Texas.

Lee H. Rosenthal
United States District Judge

---

[3]  The Arkansas court transferred Civil Action No. H-06-3504 to this court without deciding a pending motion in that case.  Defendant Georgia-Pacific Corporation filed a motion to strike TRE Management Company's amended complaint filed in the Western District of Arkansas.  (H-06-3504, Docket Entry No. 15).  On March 9, 2006, Georgia-Pacific filed a motion to dismiss or transfer, (H-06-3504, Docket Entry No. 6), and a motion to stay proceedings in the Arkansas court, (H-06-3504, Docket Entry No. 8).  On March 20, 2006, the Arkansas court granted the motion to stay pending resolution of the motion to dismiss.  (H-06-3504, Docket Entry No. 9).  On August 7, 2006, TRE filed an amended complaint.  (H-06-3504, Docket Entry No. 14).  On August 11, 2006, Georgia-Pacific moved to strike TRE's amended complaint.  (H-06-3504, Docket Entry No. 15).  On August 16, 2006, the Arkansas court transferred this case to this court without ruling on the motion to strike.  (H-06-3504, Docket Entry No. 16).  Given the transfer and the lifting of the stay, the motion to strike is moot and is denied.  (H-06-3504, Docket Entry No. 15).

34