**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| HALLIBURTON ENERGY SERVICES, INC., *et al.*, | § | |
| | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-05-4160 |
| | § | |
| NL INDUSTRIES, *et al.,* | § | |
| | § | |
| Defendants. | § | |

| | | |
|---|---|---|
| TRE MANAGEMENT COMPANY, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-06-3504 |
| | § | |
| GEORGIA-PACIFIC CORPORATION, | § | |
| *et al.*, | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

TRE Holding Corporation ("TRE Holding"), TRE Management Company ("TRE Management"), NL Industries, Inc., ("NL"), and Tremont LLC ("Tremont") (together, the "Tremont Parties") have requested a final judgment under Rule 54(b) as to the claims resolved in this court's confirmation of the arbitration awards issued on June 29, 2007 and September 10, 2007.  Plaintiffs Halliburton Energy Services, Inc. ("HESI") and DII Industries, LLC ("DII") (together, "Halliburton") oppose the entry of judgment.

After considering the motions and briefs, arguments of counsel, and the applicable law, this court finds that entry of judgment under Rule 54(b) is appropriate and grants the Tremont Parties' request. The partial final judgment is separately entered.

The reasons are set out in detail below.

## I.    Background

The relevant procedural and factual background is detailed in this court's March 31, 2008 Memorandum and Opinion, (Docket Entry No. 239), and is only summarized here. Briefly, Halliburton filed this suit in 2005 after entering into an Administrative Settlement Agreement in 2000 ("Administrative Settlement") and a Consent Administrative Order in 2003 with the Arkansas Department of Environmental Quality ("ADEQ"). In this suit, Halliburton alleged that it was entitled to recover money it had spent investigating and remediating environmental contamination at a Site near Magnet Cove and Malvern, Arkansas (the "Site"). Under the 2000 Administrative Settlement with the ADEQ, Halliburton and TRE Management agreed to investigate the Site condition, submit a report to the ADEQ, and complete a feasibility study on ways to remediate the environmental contamination. In the meantime, Halliburton and TRE Management had to perform "Interim Remedial Measures" under the Administrative Settlement.

In April 2005, before this litigation began over the responsibility to pay the Site clean-up costs, TRE Management Company and Halliburton entered into a Cost Sharing, Cooperation, and Final Allocation Process Agreement (the "2005 Cost Sharing Agreement"). This 2005 Cost Sharing Agreement included a procedure to allow the parties to cooperate in

2

continuing to fund the response and remediation costs, "allocating on an interim basis." The Agreement also set out a procedure for the parties to reach a "Final Allocation" of "their and others' respective shares of such past, present, and future costs, expenses, liabilities, settlements, recoveries, or unpaid shares relating to the Site." The Agreement defined "Final Allocation" as a "full, final, and binding apportionment among the Parties to the Agreement," by agreement or by arbitration, of defined categories of costs, including future costs. Under the Agreement, if mediation failed to reach "Final Allocation," the parties were required to participate in binding arbitration under the Commercial Arbitration Rules of the American Arbitration Association and the Federal Arbitration Act.

In 2005, Halliburton filed this suit against the Tremont Parties as the prior owners and operators of the Site when hazardous substances were released or as successors-in-interest to owners or operators. Halliburton also sued Georgia-Pacific Corporation, which owned property and mineral interests at the Site, and Milwhite Inc., a past owner and operator of the Site. Halliburton asserted cost-recovery and contribution claims under CERCLA, 42 U.S.C. §§ 9607(a) and 9613(f)(3)(B), contribution claims under RATFA, ARK. CODE ANN. §§ 8-7-503 and 520, and a right to recover response and remediation costs under a state common-law unjust enrichment cause of action. Halliburton also sought a declaratory judgment that the defendants were liable for future response and remediation costs at the Site and that Tremont Corporation was obligated to indemnify Halliburton for these costs under the contracts used to restructure the corporate predecessors-in-interest. Georgia-Pacific and

Milwhite counterclaimed against Halliburton and crossclaimed against each other and against the codefendant Tremont Parties, seeking contribution and indemnity.

On December 27, 2005, a few weeks after this lawsuit was filed, TRE Management Company—which was also a party to the 2000 Administrative Settlement Agreement and the 2003 Consent Administrative Order—sued Georgia-Pacific in the federal district court for the Western District of Arkansas, where the Site is located.  In that suit, TRE Management sought contribution under CERCLA and RATFA for Georgia-Pacific's "proportionate share of all costs and expenses TRE Management has incurred and will continue to incur in performing removal actions and remedial actions at the Site." (Docket Entry No. 38, Ex. E at 7–8).  The Arkansas court transferred TRE Management's case against Georgia-Pacific to this court under 28 U.S.C. § 1404(a).  This court ultimately consolidated the action transferred from the Arkansas court with the action originally filed in this court in January 2007.  (Docket Entry No. 123).

In March 2006, after this lawsuit and the Arkansas lawsuit had been filed, Halliburton and the Tremont Parties entered into an agreement expanding the entities included in the agreement to arbitrate the allocation of response and remediation costs at the Site.  In this 2006 Arbitration Agreement, the parties agreed to "resolve through binding arbitration all claims between them related to the allocation of response and remediation costs incurred or to be incurred at the Site including the claims that have been asserted in the Texas Case or such claims that may be asserted in the Arkansas Case." (Docket Entry No. 221, Ex. E at 2).  The parties to the 2006 Arbitration Agreement include Halliburton Energy Services, Inc.; DII

4

Industries, LLC; NL Industries, Inc.; Tremont, LLC; TRE Holding Corporation; and TRE Management Company.  The arbitration was to be held in accordance with the 2005 Cost Sharing Agreement.  (*Id.*, Ex. E at 2).

The arbitration was conducted in two phases by a panel of three arbitrators.  Each phase resulted in its own award.  The arbitration panel's contract award issued on June 29, 2007 (the "Contract Award"), and the arbitration panel's allocation award issued on September 10, 2007 (the "Allocation Award") (together, the "Awards").  The Tremont Parties moved to confirm the Awards and Halliburton moved to vacate them.  This court confirmed both Awards on March 31, 2008.  (Docket Entry No. 239).  The Tremont Parties now seek a final judgment under Rule 54(b) enabling them to enforce the Awards.  (Docket Entry No. 243).  Halliburton opposes this entry of judgment.  (Docket Entry No. 256).

## II.     The Rule 54(b) Standard

Rule 54(b) of the Federal Rules of Civil Procedure provides that:

> When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.

FED. R. CIV. P. 54(b).

Rule 54(b) permits appeal from certain district court orders before the resolution of every issue in a case.  *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 9 (1980); *see also Fields v. Pool Offshore, Inc.*, No. Civ. A. 97-3170, 1998 WL 128980, *1 (E.D. La. March

19, 1998) (citations omitted), *aff'd on other grounds*, 182 F.3d 353 (5th Cir. 1999).  A court may grant a Rule 54(b) judgment only if more than one claim for relief is presented or multiple parties are involved in an action.  *Samaad v. City of Dallas*, 940 F.2d 925, 929 (5th Cir. 1991).

Before granting a Rule 54(b) motion, a district court must make two independent findings.  *Waldorf v. Shuta*, 142 F.3d 601, 608 (3d Cir. 1998).  First, the court must find that the judgment is final as "an ultimate disposition of an individual claim entered in the course of a multiple claims action."  *Curtiss-Wright Corp.*, 446 U.S. at 7.  Second, the court must find that there is no just reason for delay in entering the final judgment.  *Id.* at 8.  This second inquiry requires the court to "take into account judicial administrative interests as well as the equities involved."  *Id.*

Rule 54(b) "reflects a balancing of two policies: avoiding the 'danger of hardship or injustice through delay which would be alleviated by immediate appeal' and 'avoid[ing] piecemeal appeals.'"  *Eldredge v. Martin Marietta Corp.*, 207 F.3d 737, 740 (5th Cir. 2000) (quoting *PYCA Indus. v. Harrison County Waste Water Mgmt. Dist.*, 81 F.3d 1412, 1421 (5th Cir.1996)).  A court should consider such factors as: "(1) the relationship between the adjudicated and the unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final; [and] (5) miscellaneous factors such as delay, economic

6

and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like." *Akers v. Alvey*, 338 F.3d 491, 495 (6th Cir. 2003) (citations and internal quotation marks omitted); *accord U.S. General, Inc. v. Albert*, 792 F.2d 678, 681 n.3 (7th Cir. 1986); *Allis-Chalmers Corp. v. Philadelphia Elec. Co.*, 521 F.2d 360, 364 (3d Cir. 1975).

In evaluating a district court's decision to grant certification under Rule 54(b), the Supreme Court has noted:

> The mere presence of such [nonfrivolous counter]claims, however, does not render a Rule 54(b) certification inappropriate. If it did, Rule 54(b) would lose much of its utility. In *Cold Metal Process Co. v. United Engineering & Foundry Co.*, 351 U.S. 445, 76 S. Ct. 904, 100 L. Ed. 1311 (1956), this Court explained that counterclaims, whether compulsory or permissive, present no special problems for Rule 54(b) determinations; counterclaims are not to be evaluated differently from other claims. Like other claims, their significance for Rule 54(b) purposes turns on their interrelationship with the claims on which certification is sought.

*Curtiss-Wright Corp.*, 446 U.S. at 9 (internal citation omitted).

## III.   The Parties' Arguments

The Tremont Parties submitted a proposed form of judgment, revised to account for some of the objections Halliburton raised. The Tremont Parties assert that the proposed judgment "tracks the Awards of the Arbitration Panel that were confirmed in this Court's

March 31, 2008 Memorandum and Opinion." (Docket Entry No. 243 at 1).[1]  In addition to

the amounts the panel awarded, the original proposed judgment included:

- remediation expenses incurred by Tremont LLC from July 1, 2007 through March 31, 2008, amounting to $630,518.17;

- prejudgment interest from September 1, 2007 through March 31, 2008, amounting to $372,782.69; and

- legal fees incurred by Tremont LLC from September 1, 2007 through March 31, 2008, amounting to $170,694.94.

(*Id.* at 2).

Halliburton incorporates the arguments made in its motion to vacate the Awards,

arguing that the court should decline judgment for the same reasons Halliburton believes the

Awards ought to have been vacated.  (Docket Entry No. 256 at 1–2).  Halliburton objects to

any language in the proposed judgment that purports to address any issue not specifically

associated with the Site.  (*Id.* at 3).

Halliburton argues that Rule 54(b) certification is unnecessary to expedite an appeal

because Halliburton has already filed an interlocutory appeal under 9 U.S.C. § 16(a)(1)(D)

from the order confirming the Awards.[2]  (Docket Entry No. 256 at 4).  Halliburton also

---

[1]  Some of the filings considered in connection with the proposed judgment contain a large number of exhibits.  Some exhibits have been filed at different docket entries than the original document they are associated with.  For ease of reference, this opinion cites to the main docket entry and the appropriate exhibit, rather than the docket entry where the exhibit is filed.  For example, the Tremont Parties' reply in support of the request for entry of judgment is filed at Docket Entry No. 263, but the proposed final judgment is filed as Exhibit V to the reply, at Docket Entry No. 266.  In this example, the proposed final judgment is cited as "Docket Entry No. 263, Ex. V."

[2]  Neither Halliburton nor the Tremont Parties has asserted that the order confirming the Awards would not be appealable absent Rule 54(b) certification.  This court notes that an authority cited by Halliburton for the proposition that Rule 54(b) certification is not appropriate, *Middleby Corp. v. Hussman*

contends that a Rule 54(b) judgment and interlocutory appeal are not appropriate because the claims resolved in the arbitration are part of a much larger dispute that includes Tremont's counterclaims against Halliburton relating to additional environmental sites; Halliburton's claims against Georgia-Pacific Corporation and Milwhite, Inc. for cost recovery and contribution under CERCLA, contribution under RAFTA, unjust enrichment, and indemnity; and Georgia Pacific's and Milwhite's counterclaims against Halliburton and the Tremont Parties for CERCLA contribution and indemnification.  (*Id.* at 5–6).  Halliburton argues that judicial economy supports withholding judgment "until such time as the claims relating to the remaining environmental sites raised by the Tremont Parties and the claims between and among Plaintiffs, Georgia Pacific, and Milwhite have been resolved." (*Id.* at 6).  Halliburton states that it intends to seek a stay of the appeal pending this court's resolution of the remaining nonarbitrable claims.  (*Id.* at 6 n.4).

The Tremont Parties argue that judgment should be entered now because: (1) the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 9, 13, requires that a judgment be issued;[3] (2)

---

*Corp.*, 962 F.2d 614 (7th Cir. 1992), held that an order consolidating two cases and thereby preventing immediate enforcement of an order confirming an arbitration award could not be appealed under 9 U.S.C. § 16(a)(1)(D) when the district court did not enter a partial final judgment under Rule 54(b).  In that case, the court dismissed the appeal for lack of jurisdiction, finding that even if failing to enter judgment on confirmation of the award amounted to an order withholding confirmation, that was not sufficient under the circumstances to give appellate jurisdiction under 9 U.S.C. § 16(a)(1)(D).  *See Middleby*, 962 F.2d at 615–16. The appeal in *Middleby* asserted error in a consolidation order that had the effect of preventing immediate enforceability of the confirmed arbitration award.  Here, the appeal directly challenges the order confirming the Awards; appellate jurisdiction is based on 9 U.S.C. § 16(a)(1)(D).

[3]    Section 9 of the FAA states:

"If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall

Halliburton agreed to entry of judgment on confirmation of the Awards; and (3) Rule 48(c) of the American Arbitration Association ("AAA") rules requires that judgment be entered.[4] (Docket Entry No. 263 at 6–10).  The Tremont Parties argue that it is "routine" for courts to enter judgment based on arbitration awards even when disputed issues that were not part of the arbitration remain pending.  (*See id.* at 7).  The Tremont Parties also point to language in the 2005 Cost Sharing Agreement in which Halliburton agreed to entry of judgment on the Awards.  (*Id.* at 9 ("'Any Party may apply to any court of competent jurisdiction to have the

---

> specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon *the court must grant such an order* unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title."

(Docket Entry No. 263 at 6–7 (quoting 9 U.S.C. §9) (emphasis added by the Tremont Parties)).

> Section 13 of the FAA states:

>> The party moving for an order confirming, modifying, or correcting an award shall, at the time such order is filed with the clerk for the entry of judgment thereon, also file the following papers with the clerk:

>> . . .

>> The judgment shall be docketed as if it was rendered in an action.

>> The judgment so entered shall have the same force and effect, in all respects, as, and be subject to all the provisions of law relating to, a judgment in an action; and it may be enforced as if it had been rendered in an action in the court in which it is entered.

9 U.S.C. § 13.

[4] AAA Rule 48(c) states that "'[p]arties to an arbitration under these rules *shall be deemed to have consented that judgment upon the arbitration award may be entered in any federal* or state *court* having jurisdiction thereof.'"  (Docket Entry No. 263 at 8 (quoting American Arbitration Association, Commercial Arbitration Rules and Mediation Procedures, http://www.adr.org/sp.asp?id=22440#R48, Rule R-48(c)) (emphasis added by the Tremont Parties)).

Arbitration Panel's Final Allocation decision confirmed *and judgment entered thereon*.'") (quoting Docket Entry No. 263, Ex. L) (emphasis added by the Tremont Parties)).   The Tremont Parties argue that without Rule 54(b) certification and judgment, Tremont will not be able to enforce the Allocation Award and that there is "no just reason for delay" because Halliburton agreed to entry of judgment on the Awards in the arbitration agreement.  (*Id.* at 9–10).  The Tremont Parties insist that they "bargain[ed] for fast arbitration with a quick true up within 60 days.  Halliburton has unequivocally breached that obligation and continues to do so to this day."  (*Id.* at 12).  The Tremont Parties state that while they do not wish to deprive Halliburton of its appellate rights, if Halliburton appeals the order confirming the Awards, it should be required to post bond under Rule 62(d) to stay the judgment.  (*Id.* at 13–14).  Although the Tremont Parties contended in their briefs that Halliburton should be required to post a bond not only for the amount of the damages awarded by the arbitration panel—now approximately $11 million—but for the full amount of the cleanup—which could be as high as $400 million—at oral argument, counsel stated that the Tremont Parties would only seek a bond in an amount the court found "equitable" and that the parties would negotiate on this issue.

## IV.  Analysis

### A.  Entry of Partial Final Judgment Under Rule 54(b)

The parties do not dispute that the Awards are a final determination of the claims submitted to arbitration.  An order is "final" if it is "an ultimate disposition of an individual claim entered in the course of a multiple claims action."  *Curtiss-Wright Corp.*, 446 U.S. at

7 (citation and internal quotation marks omitted).  The Awards resolved the claims between Halliburton and the Tremont Parties for liability for environmental cleanup and remediation costs for the Site in Malvern, Arkansas.  In its March 31, 2008 Memorandum and Opinion, this court addressed and resolved Halliburton's objections to the Awards.  The issue is now whether there is "no just reason for delay" under Rule 54(b).

The first factor a court examines is the relationship between the adjudicated and unadjudicated claims.  *Akers v. Alvey*, 338 F.3d 491, 495 (6th Cir. 2003) (citations omitted).  The claims resolved in the arbitration are Halliburton's claims against the Tremont Parties with respect to the Site.  The remaining claims include the claims asserted by Halliburton against Georgia-Pacific and Milwhite regarding the Site, Georgia-Pacific's and Milwhite's counterclaims against Halliburton and crossclaims against each other and against the codefendant Tremont Parties with respect to the Site, TRE Management's claim against Georgia-Pacific relating to the Site, and Tremont's counterclaims against Halliburton with respect to other sites.[5]

The unresolved claims by and against Georgia-Pacific and Milwhite are not sufficiently related to the claims resolved in the Awards to warrant delaying judgment on the confirmed Awards.  While there are some overlapping facts and issues between the resolved

---

[5]  Tremont's counterclaims seek recovery for liabilities derived from NL Industries, Inc.'s former petroleum services business, including, but not necessarily limited to, liabilities associated with sites located in Odessa, Ector County, Texas; Webster, Harris County, Texas; and (Tavenor) Houston, Harris County, Texas; the Malone Service Company in Galveston County, Texas; the Spinks Site located in Laurel, Mississippi; the Potosi and Fountain Farm Sites in Washington County, Missouri; the ArChem-Thames Chelsea Superfund Site in Houston, Texas; and the Olen Lee family toxic tort case in Calcasieu Parish, Louisiana.  (Docket Entry No. 240 at 2).

claims and the remaining claims involving Georgia-Pacific and Milwhite, in that the same Site is at issue, there are significant differences. First, the resolved claims and the remaining claims involving Georgia-Pacific and Milwhite do not involve all the same parties. Georgia-Pacific and Milwhite were not signatories to the arbitration agreement and did not participate in the arbitration. *See Ackerman v. Fed. Deposit Ins. Corp.*, 973 F.2d 1221, 1225 (5th Cir. 1992) ("[T]he remaining claims which Appellants contend should prevent Rule 54(b) certification involve different parties. The district court's certification was neither unreasonable nor an abuse of discretion."); *see also Zavala v. Wal-Mart Stores, Inc.*, No. 03-5309 (JAG), 2007 WL 1134110, at *3 (D.N.J. April 16, 2007) (unpublished) (noting that the Third Circuit considers "the presence of different parties (in the dismissed claims as compared to the remaining claims) as a significant factor supporting the immediate appealability of dismissed claims."); *United States v. B.C.F. Oil Refining Inc.*, No. CV-05-0562 (CPS), 2007 WL 81933, at *4 (E.D.N.Y. Jan. 9, 2007) (granting Rule 54(b) certification and noting that "[i]n a suit under CERCLA, parties are generally deemed to be jointly and severally liable for the government's cleanup costs, and, as such, a determination of liability for one party is not tied to a determination for the other party.") (internal citation omitted).

The issue on appeal with respect to the confirmation of the Awards will be whether this court properly confirmed the Awards, not the merits of the contract and CERCLA disputes. *See Forest Elec. Corp. v. HCB Contractors*, No. Civ. A. 91-1732, Civ. A. 91-5350, 1995 WL 429141, at *2 (E.D. Pa. July 20, 1995); *Fitigues, Inc., LRV v. Varat Enters., Inc.*,

13

813 F. Supp. 1336, 1339 (N.D. Ill. 1992).  In *Forest Electric Corp.*, the court explained that

because all arbitrable claims had been resolved, Rule 54(b) certification was appropriate:

> [A]ll of the issues relating to the conduct of the arbitration and
> the Arbitration Award have been determined.  The unarbitrated
> claims are distinct matters that do not affect the ability of the
> Court of Appeals to determine whether to affirm or reverse the
> confirmation of the Award; *the unarbitrated claims were by
> agreement and design not determined within the context of the
> arbitration.*

*Forest Elec. Corp.*, 1995 WL 429141, at *2 (emphasis added).  Similarly, in *Fitigues*, the

court explained:

> Review of the arbitration award, however, is limited to those
> circumstances expressly provided in § 10 of the Federal
> Arbitration Act, 9 U.S.C. § 10.  Those circumstances concern
> the conduct of the arbitrator and the circumstances under which
> the award [was] obtained, *not the merits of the arbitrator's
> decision*.  Accordingly, we find that the decided issue and the
> remaining issue cannot be deemed a single claim for relief under
> Rule 54(b).

*Fitigues*, 813 F. Supp. at 1338–39 (emphasis added).

Because the claims involving Georgia-Pacific and Milwhite do not involve all of the

same parties to the arbitration and because the issue on appeal will be the propriety of

confirming the Awards and not the underlying contractual and CERCLA issues, the claims

involving Georgia-Pacific and Milwhite do not significantly overlap with the claims

adjudicated in the arbitration.

Tremont's counterclaims against Halliburton relating to different environmental sites

and claims also do not significantly overlap with the claims resolved in arbitration.  Liability

for the sites and claims raised in Tremont's counterclaims was not included in the claims the parties agreed to arbitrate in their arbitration agreement, was not litigated in the arbitration, and was not addressed in the Awards.  The issues in Tremont's counterclaims differ from the issues that will be raised on appeal of the confirmed Awards.  The appeal will address whether this court properly confirmed the Awards.  *See Forest Elec. Corp.*, 1995 WL 429141, at *2; *Fitigues*, 813 F. Supp. at 1338–39.  And there are factual differences between Tremont's counterclaims and the claims resolved by confirming the Awards because different sites are at issue.  The sites and claims raised in Tremont's counterclaims were not part of this litigation until those counterclaims were added after this court confirmed the Awards.

The remaining claims involving Georgia-Pacific and Milwhite and the Tremont counterclaims against Halliburton are different from those adjudicated in the confirmed Awards.  The relationship of the pending claims to the resolved claims weighs in favor of granting certification under Rule 54(b).

The second factor, whether the issues on appeal could be mooted by future developments in the district court, also weighs in favor of certification under Rule 54(b).  The issue on appeal from the judgment confirming the arbitrated claims will be whether confirmation was proper given the statutory grounds for relief from an arbitration award.  *See Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 128 S. Ct. 1396, 1406 (2008) (explaining that Sections 10 and 11 of the FAA provide the exclusive grounds for vacatur of an arbitration award under the statute).  The issues on appeal are unlikely to be mooted by this court's

decision on the remaining claims.

For the same reasons, the third factor, addressing whether the appellate court might be obliged to consider the same issues twice, also weighs in favor of Rule 54(b) certification. Whether this court properly confirmed the Awards is different from the issues in the remaining claims, which involve either different parties or different environmental sites. If anything, prompt appellate review of the confirmation of the Awards could assist in resolving the remaining claims. In its counterclaims, Tremont has contended that the Awards are entitled to preclusive effect with respect to other environmental sites and claims. (*See* Docket Entry No. 252 at 3 ("[A]s a result of the September 10, 2007 Arbitration Award, Tremont requests this Court grant partial summary judgment in Tremont's favor based upon res judicata (claim preclusion) and collateral estoppel (issue preclusion).")). To the extent that the Awards may have any issue or claim preclusive effects, it would be more efficient to know sooner rather than later whether the confirmation of those awards will be upheld on appeal.

The fourth factor relevant to certification under Rule 54(b) relates to the presence or absence of a claim or counterclaim that could result in a set-off against the judgment to be made final. The pending claims involving Georgia-Pacific and Milwhite will not result in a set-off of the amounts the Allocation Award ordered paid to Tremont. Georgia-Pacific and Milwhite were not involved in the arbitration. As a result, the claims involving Georgia-Pacific and Milwhite will not result in an award that could set-off the amounts awarded to Tremont in the arbitration. Halliburton has not contended that Tremont's counterclaims will

result in a set-off against the amounts awarded in arbitration.  Because the counterclaims seek indemnification and contribution *for Tremont* with respect to different sites and because *the Tremont Parties prevailed* in the Awards, it seems unlikely that Tremont's counterclaims will result in a set-off with respect to the Awards.  This factor also weighs in favor of certifying the confirmation of the Awards under Rule 54(b).

The final considerations for certification under Rule 54(b) include "miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like." *Akers*, 338 F.3d at 495 (citations and internal quotation marks omitted).  Special facts at issue in this case weigh in favor of certification.  Courts have noted that Rule 54(b) certification may be used to permit prompt execution of a judgment. *See Bank of Lincolnwood v. Fed. Leasing, Inc.*, 622 F.2d 944, 951 (7th Cir. 1980) ("An important effect of a 54(b) certification is that the entry of judgment permits prompt execution.  When no substantial reason appears why a litigant should not be entitled to collect upon a claim adjudicated in its favor immediately, the appellate courts will sustain the entry of judgment upon that claim by the trial court.") (citing *United Bank of Pueblo v. Hartford Accident & Indem. Co.*, 529 F.2d 490 (10th Cir. 1976); *Norris Mfg. Co. v. R.E. Darling Co.*, 315 F.2d 633 (4th Cir. 1963); *Allis-Chalmers*, 521 F.2d at 364); *see also B.C.F. Refining Inc.*, 2007 WL 81933, at *3 n.2 (citing *Bank of Lincolnwood*, 622 F.2d at 949 n.7).  The *Bank of Lincolnwood* court explained:

> [E]ven though Rule 54(b) was promulgated largely to permit
> occasional piecemeal appeals, we do not believe that either its
> language or the sound administration of justice require that its

17

> use be confined solely to permit appeals. In determining whether there is no just cause for delay, the district court may properly consider all of the consequences of a final judgment or the lack thereof and balance the competing interests of the parties in the context of the particular case.

622 F.2d at 949 n.7. The court further explained that the 10-month delay in collection was creating a hardship for the prevailing party, noting that "[d]elay in the entry of final judgment would prevent execution" and that similar claims were pending against the losing party, making it unlikely that the losing party would be able to satisfy all claims against it. *Id.* at 951. The court concluded that "[t]he just economic interest of Lincolnwood in the prompt entry of a final enforcement judgment was a fact which the trial court could properly consider."[6] *Id.* (citing *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1 (1980)).

The ability to enforce a judgment is not always a reason to certify a judgment under Rule 54(b). *See Clark v. Underwriters Mgmt. Corp.*, No. 98 C 4084, 2003 WL 21148420, at *4 (N.D. Ill. May 16, 2003) ("As a general matter, parties will always prefer to be able to collect their judgments sooner rather than later. In the normal course of litigation, however, they must wait until a final judgment at the conclusion of the litigation to collect a judgment.") (citation omitted). For example, in *Clark*, the court noted that the plaintiff had

---

[6] In *Bank of Lincolnwood*, liability was uncontested. The court noted that because liability was uncontested, there were no substantial issues for appeal, and thus the considerations relevant to the policy against piecemeal appeals were inapplicable. *Bank of Lincolnwood*, 622 F.2d at 952 n.10. Although liability is contested in the present case, the policy against piecemeal appeals is not particularly compelling here because Halliburton already has a statutory right to an interlocutory appeal and has already filed a notice of appeal with respect to the confirmation of the Awards. (*See* Docket Entry No. 254 at 1 (citing 9 U.S.C. § 16(a)(1)(D))). Halliburton has indicated that it intends to seek a stay of that appeal. The primary purpose of certifying the confirmation of the Awards under Rule 54(b) would be to permit the Tremont Parties to enforce the Awards.

not alleged that the defendants were financially unstable, which could warrant immediate payment under the *Bank of Lincolnwood* case. *Id.* at *5. While partial final judgment is not always appropriate to permit enforceability of an interlocutory order, and while it is not contended that Halliburton is financially unstable, other factors weigh in favor of permitting prompt enforceability. The monetary judgment resulting from the Awards is substantial. The remaining claims relate to different sites or different parties and may take substantial time to resolve, making prompt enforceability appropriate despite Halliburton's financial stability.[7] In addition, the Tremont Parties have an interest in having the Awards enforced to avoid becoming implicated in potential additional liabilities at the Site.[8]

Arbitration is intended to be faster than litigation. *See Hall Street Assocs.*, 128 S. Ct. at 1405 ("Instead of fighting the text [of the FAA], it makes more sense to see the three provisions, §§ 9–11, as substantiating a national policy favoring arbitration with just the limited review needed to maintain arbitration's essential virtue of resolving disputes straightaway. Any other reading opens the door to the full-bore legal and evidentiary appeals that can 'rende[r] informal arbitration merely a prelude to a more cumbersome and time-consuming judicial review process,' . . . and bring arbitration theory to grief in post-

---

[7] While Tremont is responsible for bringing some of the remaining claims following the confirmation of the Awards, there has not been an assertion that bringing these additional claims was improper, and this court does not find that Tremont's assertion of additional claims relating to different sites weighs against certifying the confirmation of the Awards under Rule 54(b).

[8] As an example, the Tremont Parties' counsel informed this court that a 17-year-old boy recently drowned at the pit at the Site, giving the Tremont Parties an additional reason to seek immediate enforcement of the Awards and to remove their name from association with ownership or liability at the Site.

19

arbitration process.") (citing *Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*, 341 F.3d

987, 998 (9th Cir. 2003); *Ethyl Corp. v. United Steelworkers of Am.*, 768 F.2d 180, 184 (7th

Cir. 1985)); *cf. Clarendon Nat'l Ins. Co. v. TIG Reinsurance Co.*, 990 F. Supp. 304, 309

(S.D.N.Y. 1998) (noting that the availability of confirmation of a partial arbitration award

"'reflects the frequently expressed purpose of arbitration to permit a relatively quick and an

inexpensive resolution of contractual disputes.'") (quoting *Seton Co. v. Lohmann GmbH &*

*Co., KG*, No. 90 Civ. 1312 (CSH), 1992 WL 80637, at *8 (S.D.N.Y. April 9, 1992)).  The

nature of arbitration and its promise of delivering quick resolution of claims weighs in favor

of prompt enforceability of the arbitrated claims while litigation of the nonarbitrable claims

proceeds.[9]

_____

[9] The Tremont Parties contend that the FAA requires entry of judgment on the confirmation of the
Awards.  In support of this argument, the Tremont Parties cite to Section 9 of the FAA, which provides:

> If the parties in their agreement have agreed that a judgment of the court
> shall be entered upon the award made pursuant to the arbitration, and shall
> specify the court, then at any time within one year after the award is made
> any party to the arbitration may apply to the court so specified for an order
> confirming the award, and thereupon the court must grant such an order
> unless the award is vacated, modified, or corrected as prescribed in sections
> 10 and 11 of this title.

9 U.S.C. § 9.  This section appears to be directed to whether the court must grant an order confirming
arbitration awards, not whether the court is required to grant partial final judgment on the confirmation of the
awards when other claims remain pending.

The Tremont Parties also cite to Section 13 of the FAA, which refers to judgment on an order
confirming, modifying, or correcting an award.  (Docket Entry No. 263 at 7).  This section addresses which
papers the party moving for an order confirming, modifying, or correcting an award must file with the clerk
"at the time such order is filed with the clerk for entry of judgment thereon . . . ."  9 U.S.C. § 13.  This section
appears directed to papers that are to be filed with the clerk once the court directs entry of judgment, not to
a requirement that the court enter partial final judgment on an arbitration award when other claims remain.

Whether Sections 9 and 13 of the FAA apply to the determination of whether a Rule 54(b) judgment
is appropriate need not be decided because other grounds support certifying the order confirming the Awards.

Arbitration is contractual.  The parties agreed to entry of judgment on the final allocation made by the panel.  (*See* Docket Entry No. 263, Ex. L at 9–10 ("Any Party may apply to any court of competent jurisdiction to have the Arbitration Panel's Final Allocation decision confirmed *and judgment entered thereon*.") (emphasis added)).  The parties also agreed to cooperate following the final allocation.  (*Id.*, Ex. L. at 10 ("*Immediately* following Final Allocation, the Parties shall: (1) negotiate in good faith to enter into one or more amendments to this Agreement or other agreements pursuant to which the Parties would cooperate with respect to . . . long-term post closure activities, which activities would be funded by the Parties *in accordance with the percentages of responsibility determined in the Final Allocation*; and (2) cooperate in good faith in the performance of . . . any other activities relating to the Site that may be required between the date of the Final Allocation and the amendments or other agreements contemplated immediately above.") (emphasis added)).  The parties expanded the scope of the arbitration agreement in March 2006, after the filing of this lawsuit and the related lawsuit in Arkansas, despite the existence of pending claims relating to the Site involving Georgia-Pacific and Milwhite.  The parties knew that other claims relating to the Site would not be resolved through arbitration and still agreed to entry of judgment on the Final Allocation made in the arbitration.  The arbitration contracts weigh in favor of entering judgment pursuant to Rule 54(b).  *See Transp. Displays Inc. v. Winston*, 870 F. Supp. 74, 77, 77 n.5 (S.D.N.Y. 1994) (granting Rule 54(b) judgment despite the existence of other pending claims, and noting that "one of the aspects of the bargain was that the defendants would have the unfettered right to invest or dispose of their funds up to

21

the moment that they become liable to the plaintiffs on the indemnity.  A refusal to enter a final and enforceable judgment would deprive them of that right.") (footnote omitted).

The AAA Rules, which the parties agreed governed the dispute submitted to arbitration, also counsel in favor of certification under Rule 54(b).  The rules provide that "[p]arties to an arbitration under these rules shall be deemed to have *consented that judgment upon the arbitration award* may be entered in any federal or state court having jurisdiction thereof."  American Arbitration Association, Commercial Arbitration Rules and Mediation Procedures, http://www.adr.org/sp.asp?id=22440#R48, Rule R-48(c) (emphasis added); *see also McKee v. Home Buyers Warranty Corp. II*, 45 F.3d 981, 983 (5th Cir. 1995) ("The decisions holding that reference to AAA rules as permitting entry of judgment are longstanding.  Consequently, all parties are on notice that resort to AAA arbitration will be deemed both binding and subject to entry of judgment unless the parties expressly agree otherwise.") (citation omitted).  While the AAA Rules may not require certification under Rule 54(b), they do weigh in favor of certification, particularly given the fact that the remaining claims are not currently subject to arbitration.

Finally, the Allocation Award itself, which the parties agreed to be bound by, specified that Tremont was entitled to a judgment rendering the award enforceable.  The Fifth Circuit recently emphasized the importance of enforcing an arbitration award as written in *Wartsila Finland OY v. Duke Capital LLC*, 518 F.3d 287 (5th Cir. 2008).  In *Wartsila*, the contract providing for arbitration specified that "'any decision rendered by the arbitrators in any arbitration shall be final and binding upon the Parties, and judgment may be entered on

the award in any court of competent jurisdiction.'" *Id.* at 290.  The arbitration panel in *Wartsila* awarded €11,315,385 to Wartsila and $757,085 to Wartsila's opponent, DEI.  *Id.* Wartsila sought payment under the final award.  *Id.*  DEI refused to pay, claiming that it needed protection from loss due to defective or unfinished work related to the project.  *Id.* at 290–91.  DEI commenced arbitration on claims it had withdrawn from the previous arbitration.  *Id.* at 291.  Wartsila moved for confirmation and enforcement of the tribunal's award.  *Wartsila*, 518 F.3d at 291.  The motion was granted because neither party objected to confirmation.  *Id.*  The district court rejected DEI's request for a stay of enforcement and "enforced the award by reducing it to a judgment—the judgment required DEI to pay Wartsila $13,677,951.64."  *Id.*  On appeal, DEI did not challenge the confirmation of the award, but argued that the district court was not permitted to enter "a judgment requiring payment while DEI still had claims outstanding in a separate arbitration arising out of the contract."  *Id.* at 292.  The Fifth Circuit explained the governing standard: "A district court should enforce an arbitration award as written—to do anything more or less would usurp the tribunal's power to finally resolve disputes and undermine the pro-enforcement policies of the New York Convention.  Therefore we look to the tribunal's award in reviewing the district court's confirmation order to ensure the district court properly confirmed and enforced the tribunal's award."  *Id.* (internal citations omitted).  The court concluded:

> [T]he panel's unambiguous mandate that "Duke pay Wartsila" suggests that the tribunal required payment, with no strings attached to enforcement of the award.  Therefore, the district court's order and judgment were consistent with the award as written.  Nothing in the tribunal's award prevented the district

23

> court from confirming and enforcing the award by reducing it to
> a money judgment in favor of Wartsila.

*Id.* at 294.  The court similarly found no impediment to final judgment based on the fact that

DEI had outstanding arbitration claims against Wartsila.  *Wartsila*, 518 F.3d at 295.

As in *Wartsila*, the panel here was unambiguous in its order granting recovery to the

Tremont Parties and entitling Tremont to a judgment on the Allocation Award.   The

Allocation Award concludes with the following paragraph:

> The Panel finds that *Tremont LLC is entitled to a judgment*
> *against Halliburton Energy Services, Inc. and DII Industries*
> *LLC* in the total amount of $10,047,231.50 [$8,650,000 +
> $897,231.52 + $500,000], together with all costs, as described
> in B. above, which are incurred after June 30, 2007, plus any
> legal expenses incurred after August 31, 2007.  Post-judgment
> interest will accrue at the rate of six percent (6%) per year on the
> total judgment amount commencing September 1, 2007.

(Docket Entry No. 172, Ex. 1 at 39 (emphasis added)).  Although *Wartsila* did not involve

certification under Rule 54(b) because the federal court case dealt with confirmation of an

award issued by an arbitration tribunal and reduction to judgment while other related claims

were subject to a separate arbitration, the case is instructive.  DEI sought to stay enforcement

of the first award while other claims related to the same contract were separately arbitrated.

The *Wartsila* court emphasized the importance of enforcing an arbitration award despite

pending unresolved related claims.  Although *Wartsila* was not decided in the Rule 54(b)

context, the analysis of when immediate enforcement of an arbitration award is appropriate

translates well into the Rule 54(b) analysis of whether prompt enforcement is appropriate.

The *Wartsila* court emphasized that "[a] district court should enforce an arbitration award

24

as written . . . ." *Wartsila*, 518 F.3d at 292.  The Awards recognized that other claims related to the Site were unresolved, but did not give any indication that the award in favor of the Tremont Parties would not be immediately enforceable.  (*See* Docket Entry No. 172, Ex. 1 at 34 ("Based upon the contractual provisions between the parties, and the lack of legal authority for the Panel to bind non-parties to this arbitration award, the Panel declines to assess any liability to entities which are not signatories to the Cost Sharing Agreement.")).  The clear statements in the Allocation Award granting relief to the Tremont Parties and providing for a judgment in Tremont's favor weigh toward certification under Rule 54(b).

Halliburton has directed this court to *Middleby Corp. v. Hussman Corp.*, 962 F.2d 614, 615–16 (7th Cir. 1992), in which the trial court declined to enter partial final judgment under Rule 54(b) after confirming an arbitration award in favor of Hussman.  In that case, the parties' contract specified that Middleby was to satisfy the arbitrator's award within three business days.  *Id.* at 615.  Middleby refused to pay until a suit it had filed against Hussman alleging fraud and breach of warranty was resolved.  *Id.*  Hussman then filed its own suit requesting enforcement of the arbitration award.  *Id.*  The two cases were consolidated and the arbitration award was confirmed.  *Id.*  The district court declined to enter judgment on the award, finding that Middleby's claims ought to be resolved first.  *Id.*  Hussman appealed, asserting that the consolidation was erroneous.  *Middleby*, 962 F.2d at 615.  The Seventh Circuit dismissed the appeal for lack of jurisdiction, *id.* at 617, rejecting Hussman's contention that the appellate court ought to compel entry of judgment under Rule 54(b), *id.* at 616.  The court stated that "[r]esort to Rule 54(b) lies in the discretion of the district court,

reviewable on a deferential standard." *Id.* The appellate court noted that "Rule 54(b) would have offered Hussman little solace given *Perera v. Siegel Trading Co.*, 951 F.2d 780, 786 (7th Cir. 1992), which holds that Rule 54(b) may not be used to separate for immediate appeal an arbitration question embedded in a larger dispute."[10] *Id.* The court analogized Section 16(a)(1)(D) of the FAA to 28 U.S.C. § 1292(a)(1), and concluded that Section 16(a)(1)(D) did not authorize interlocutory appeal of a consolidation order that ultimately resulted in failure to reduce a confirmation of an arbitration award to judgment after consolidation with a related case. *See id.*

Halliburton relies on *Middleby* for several propositions, including that "a district court has discretion to withhold the entry of judgment on a confirmed arbitration award until other nonarbitrable claims are decided," that "Rule 54(b) may not be used to separate for immediate appeal an arbitration question embedded in a larger dispute," and that "[a] trial court has the discretion to enter final judgment at the appropriate time and the 'appropriate'

---

[10] The arbitration question at issue in the *Perera* case cited in *Middleby* related to the propriety of a district judge's order compelling arbitration, not to the propriety of entering judgment under Rule 54(b) on an order confirming an arbitration award. *See Perera*, 951 F.2d at 783. The *Perera* court stated that "a district court's entry of a Rule 54(b) judgment cannot transform an interlocutory decision into a final decision," *id.* at 786, but did not address the propriety of certifying under Rule 54(b) when a decision is final. *See Fitigues, Inc. v. Varat Enters., Inc.*, 813 F. Supp. 1336, 1338 (N.D. Ill. 1992) ("Fitigues, relying on *Perera* . . ., argues that entry of final judgment is inappropriate in this case because 'the arbitration question [is] embedded in a larger dispute.' Contrary to Fitigues['s] suggestion, however, the court in *Perera* did not hold that Rule 54(b) may never be used to separate an arbitration award for final judgment. Rather, in *Perera*, the court confronted an order compelling arbitration which, *unlike a final and fully confirmed arbitration award*, is an interlocutory order expressly rendered unappealable by Section 16 of the Federal Arbitration Act, 9 U.S.C. § 16.") (emphasis added). In addition, much more recently than the *Middleby* decision, the Seventh Circuit disapproved of the holding in *Perera*. *See Am. Int'l Specialty Lines Ins. Co. v. Elec. Data Sys. Corp.*, 347 F.3d 665, 668 (7th Cir. 2003) ("Cases which suggest that an order to arbitrate is . . . never final and appealable, such as *Perera v. Siegal Trading Co.*, *supra*, 951 F.2d at 786, . . . cannot survive *Green Tree* [*Fin. Corp.–Alabama v. Randolph*, 531 U.S. 79 (2000)].").

time depends on the nature of the parties' dispute."  (Docket Entry No. 256 at 5).  The facts in the *Middleby* case are readily distinguishable from the facts of this case.  In *Middleby*, the party who lost in the arbitration did not challenge the confirmation of the arbitration award and offered to put the amount of the award in escrow pending resolution of its remaining claims.  The parties in *Middleby* had no statutory right to appeal the failure to reduce that award to an enforceable judgment.  While *Middleby* supports the proposition that a court has discretion to postpone final judgment on a confirmed arbitration award and to determine the appropriate time for entering judgment, it does not compel a district court to postpone final judgment on a confirmed award based on remaining unarbitrable claims.  This court finds that even with discretion to postpone final judgment, certification of the claims resolved by the confirmed Awards is appropriate because the factual and legal issues involved in the resolved claims do not significantly overlap with the remaining claims, the parties' arbitration agreement as well as the policies underlying arbitration contemplate prompt resolution of the arbitrable claims and enforcement of the Awards, the Allocation Award grants Tremont the right to judgment without delay, and the AAA Rules weigh in favor of immediate judgment.

In sum, this court finds that there is no just reason for delay in entering partial final judgment as to the claims resolved in the confirmed Awards.[11]

---

[11] Counsel for the Tremont Parties suggested during oral argument that judgment would be appropriate pursuant to Rule 58.  This issue has not been fully briefed and it is unnecessary to address it here because this court has determined that judgment is appropriate under Rule 54(b).

### B.    Halliburton's Additional Objections to the Proposed Judgment

In addition to objecting to entering partial final judgment pursuant to Rule 54(b), Halliburton has also objected to aspects of the proposed judgment.  (*See* Docket Entry No. 256).

Halliburton incorporated the arguments raised in its motion to vacate the Awards. (*Id.* at 1–2).  This court has already addressed those arguments, (*see* Docket Entry No. 239), and Halliburton has presented no reason why those arguments should be readdressed with respect to the entry of partial final judgment.

Halliburton also objected to language in the proposed judgment stating that this court adopts the findings of fact and conclusions of law set forth in the Awards.  (Docket Entry No. 256 at 2).  Halliburton argued that because of the deferential standard district courts apply to reviewing arbitration awards, the final judgment should not adopt the panel's findings of fact and conclusions of law.  (*See id.*).  In response, the Tremont Parties have modified their proposed final judgment to state that this court confirms (rather than adopts) the findings of fact and conclusions of law set forth in the Allocation Award.  (*See* Docket Entry No. 263, Ex. V).  The Tremont Parties have dropped their contention that this court should "adopt" the findings and conclusions of the arbitration panel and instead ask this court to "confirm" them.  (*See id.*, Ex. V).  This court's March 31, 2008 opinion confirmed the Awards under the applicable deferential standard of review.[12]  *See Hall Street Assocs.*, 128 S. Ct. at 1405

---

[12] As discussed in detail in this court's memorandum and opinion confirming the Awards, arbitration awards are reviewed under a deferential standard.  (*See* Docket Entry No. 239 at 32 ("'We will not second-guess multiple, implicit findings and conclusions underpinning the award.'") (quoting *Am. Laser Vision, P.A.*

("[I]t makes more sense to see the three provisions, §§ 9–11, as substantiating a national policy favoring arbitration with just the limited review needed to maintain arbitration's essential virtue of resolving disputes straightaway."); *accord Am. Laser Vision, P.A. v. Laser Vision Inst., L.L.C.*, 487 F.3d 255, 260 (5th Cir. 2007) (per curiam) ("We will not second-guess multiple, implicit findings and conclusions underpinning the award.  We do not decide if the award was free from error.  We decide only that it is not the kind of extraordinary award that ineluctably leads to the conclusion that the arbitrator was 'dispensing his own brand of industrial justice.'").   This court enters judgment on the March 31, 2008 Memorandum and Opinion confirming the Awards.

Halliburton has also objected to certain dollar amounts in the original proposed judgment as unsubstantiated, including the remediation expenses paid at the Site from July

---

*v. Laser Vision Inst., L.L.C.*, 487 F.3d 255, 260 (5th Cir. 2007) (per curiam)); *id.* at 32–33 ("An arbitrator's factual findings 'are unreviewable' and 'must be accepted as true.'") (quoting *Apache Bohai Corp. LDC v. Texaco China BV*, 480 F.3d 397, 407, 409 (5th Cir. 2007)); *id.* at 47 ("'When an arbitrator resolves disputes regarding the application of a contract, and no dishonesty is alleged, the arbitrator's 'improvident, even silly, factfinding' does not provide a basis for a reviewing court to refuse to enforce the award.'") (quoting *Kergosien v. Ocean Energy, Inc.*, 390 F.3d 346, 358 (5th Cir. 2004) (additional internal quotation marks omitted)); *id.* at 85 ("'Internal inconsistencies in the opinion are not grounds to vacate the award notwithstanding the Home's plausible argument that the arbitrator's decision was misguided or our own concerns regarding the arbitrator's conclusion.'") (quoting *Saint Mary Home, Inc. v. Serv. Employees Int'l Union, Dist. 1199*, 116 F.3d 41, 44–45 (2d Cir. 1997))).  A court may not refuse to confirm an arbitration award even if it disagrees with the factual findings or legal conclusions.  *Cf. Collins v. D.R. Horton, Inc.*, 505 F.3d 874, 883 (9th Cir. 2007) (noting that "'[a]bsent an objection on one of the narrow grounds set forth in sections 10 or 11, the [FAA] requires the court to enter judgment upon a confirmed arbitration award, without reviewing either the merits of the award or the legal basis upon which it was reached," and that "a judgment upon a confirmed arbitration award is qualitatively different from a judgment in a court proceeding, even though the judgment is recognized under the FAA for enforcement purposes.'") (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1133–34 (9th Cir. 2000) (footnote omitted)), *cert. denied*, 128 S. Ct. 1739 (2008); *Biobased Sys., L.L.C. v. Biobased of S. Tex., LLC*, No. H-06-2149, 2007 WL 1080114, at *2 (S.D. Tex. April 9, 2007) ("[T]he Court did not issue its own judgment on substantive issues it decided after trial or on a motion to dismiss or for summary judgment. '[A] judgment upon a confirmed arbitration award is qualitatively different from a judgment in a court proceeding, even though the judgment is recognized under the FAA for enforcement purposes.'") (quoting *Chiron*, 207 F.3d at 1133–34).

1, 2007 through March 31, 2008, (*see* Docket Entry No. 256 at 2), and the legal fees from September 1, 2007 through March 31, 2008, (*see id.* at 3).  The parties have represented their agreement to the numbers in the proposed judgment submitted with the Tremont Parties' reply.[13]

The revised proposed final judgment submitted with the Tremont Parties' reply contains the statement: "This Judgment is without prejudice to all additional rights that the Tremont Parties have to enforce their rights to seek relief in Court for any issues not addressed by the Arbitration Panel, including properties and liabilities not addressed by the Arbitration Panel."  (Docket Entry No. 263, Ex. V at 5).  Halliburton objected to language in the original proposed judgment that "purports to govern or address any issue beyond those associated specifically with the Site located in Malvern, Arkansas."  (Docket Entry No. 256 at 3).  The proposed statement simply clarifies that the judgment only addresses the claims resolved in the arbitration and is not intended to adjudicate other claims, including claims arising from other sites.

Halliburton objected to "language in the Proposed Judgment purporting to preserve

---

[13] Although the parties refer to interest starting September 1, 2007 as "prejudgment interest," the Allocation Award only provided for "prejudgment" interest through August 31, 2007. (*See* Docket Entry No. 172, Ex. 1 at 37 ("[A]ny pre-judgment interest awarded shall be calculated from December 9, 2005, through August 31, 2007.")).  Any interest calculated after August 31, 2007 would be "postjudgment" interest, according to the terms of the Allocation Award. (*See id.*, Ex. 1 at 38 ("The Panel awards Tremont, LLC post-judgment interest on all unpaid amounts awarded hereunder, which interest shall accrue at the simple rate of six percent (6%) per year commencing August 31, 2007, and continuing until the amounts awarded are paid in full."); *see also id.*, Ex. 1 at 39 ("Post-judgment interest will accrue at the rate of six percent (6%) per year on the total judgment amount commencing September 1, 2007.")).  This distinction should not make a difference as a practical matter because the panel specified that interest accrues at the rate of six percent for both pre- and post-judgment interest. (*See id.*, Ex. 1 at 37 ("[T]he panel finds that pre- and post-judgment interest rates shall accrue at the simple rate of six percent (6%) per year. . . .")).

additional rights and enforcement rights claimed by the Tremont Parties under the arbitration awards," arguing that it is superfluous and unnecessary.  (Docket Entry No. 256 at 6).  Such language is appropriate only to the extent that it clarifies that the judgment is not meant to remove any rights granted by the arbitration panel.  *See Wartsila*, 518 F.3d at 292 ("A district court should enforce an arbitration award as written—to do anything more or less would usurp the tribunal's power to finally resolve disputes . . . .") (citations omitted).  It is appropriate for the judgment to convey that the fact that it does not list every finding and conclusion from the Awards does not mean that enforcement is limited to only those rights specified in the judgment.

The parties have also raised the issue of whether this court should retain jurisdiction to enforce the judgment or to hear additional claims related to the Awards or not resolved by the Awards.  The revised proposed judgment states that this court "retains jurisdiction to hear any claims to enforce the declaratory relief set forth in the [Allocation] Award and to hear any claims that were not resolved by the [Allocation] Award."  (Docket Entry No. 263, Ex. V at 5).  It is not clear that Halliburton specifically objects to the court retaining jurisdiction to enforce the judgment or the Awards.  The Tremont Parties appear to believe that Halliburton does object.  (*See* Docket Entry No. 263 at 20).

The Tremont Parties point to *Zeiler v. Deitsch*, in which the Second Circuit explained:

> "As a general rule, once a federal court has entered judgment, it has ancillary jurisdiction over subsequent proceedings necessary to vindicate its authority, and effectuate its decrees.  This includes proceedings to enforce the judgment." *Dulce v. Dulce*, 233 F.3d 143, 146 (2d Cir. 2000) (quotation marks and internal

> citation omitted).  In the context of an arbitration, the judgment
> to be enforced encompasses the terms of the confirmed
> arbitration awards and may not enlarge upon those terms.
> However, enforcement is not confirmation.  Once confirmed, the
> awards become enforceable court orders, and, when asked to
> enforce such orders, a court is entitled to require action to
> achieve compliance with them.

500 F.3d 157, 170 (2d Cir. 2007).  This language, and other authorities, support the Tremont

Parties' assertion that this court would have jurisdiction in proceedings to enforce the

judgment.  However, this jurisdiction does not depend on the language the Tremont Parties

proposed in the partial final judgment on the confirmed Awards.

The Tremont Parties argue that if Halliburton seeks a stay pending an appeal of the

confirmation order or a subsequent judgment, it must post bond as required by Rule 62(d)

of the Federal Rules of Civil Procedure.  (Docket Entry No. 263 at 14).  The bond issue has

not been fully briefed and it is not necessary to determine it now, given that Halliburton has

not yet moved for a stay.

After the hearing, the Tremont Parties submitted a supplemental filing requesting that

legal fees and costs from May 1, 2008 through May 30, 2008 relating to the Site be included

in the judgment.  (Docket Entry No. 267).  Halliburton has not objected to the invoices

documenting the additional fees and costs.

## V.  Conclusion

There is no just reason for delay in entering partial final judgment, certified under

Rule 54(b), on the claims resolved in the confirmed Awards.  Certification of the claims

resolved by confirmation of the Awards as a final judgment is appropriate.[14]  Entering final

judgment does not raise inefficiency or other concerns associated with "piecemeal" litigation.

      This court grants the Tremont Parties' request for entry of partial final judgment under

Rule 54(b).  Halliburton's objections to the final judgment are sustained in part and overruled

in part, as set out in this opinion and the corresponding partial final judgment.  The partial

final judgment is separately entered.

      SIGNED on July 2, 2008, at Houston, Texas.

                                      Lee H. Rosenthal
                                United States District Judge

---

[14] The FAA grants an immediate appellate right with respect to confirmation of an arbitration award. 9 U.S.C. § 16(a)(1)(D).  Because Rule 54(b) judgment is appropriate here, enforceability without Rule 54(b) judgment is not addressed.