## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| HALLIBURTON ENERGY SERVICES, INC., *et al.*, | § § § | |
| Plaintiffs, | § § | |
| VS. | § § | CIVIL ACTION NO. H-05-4160 |
| NL INDUSTRIES, *et al.,* | § § § | |
| Defendants. | § | |
| | | |
| TRE MANAGEMENT COMPANY, | § § | |
| Plaintiffs, | § § | |
| VS. | § § | CIVIL ACTION NO. H-06-3504 |
| GEORGIA-PACIFIC CORPORATION, *et al.*, | § § § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

On July 2, 2008, this court entered final judgment under Federal Rule of Civil Procedure 54(b) on the claims resolved in the arbitration between Halliburton—Halliburton Energy Services, Inc. ("HESI") and DII Industries, LLC ("DII") (together, "Halliburton")— and the Tremont Parties—TRE Holding Corporation ("TRE Holding"), TRE Management Company ("TRE Management"), NL Industries, Inc. ("NL"), and Tremont LLC ("Tremont") (together, the "Tremont Parties"). (Docket Entry No. 277). The arbitration addressed the responsibility between Halliburton and the Tremont Parties for past and future costs of

investigating and remediating environmental contamination at a site near Magnet Cove, Arkansas and Malvern, Arkansas (the "Site"). Halliburton has moved to stay enforcement of the judgment pending appeal, without the necessity for a bond. (Docket Entry No. 278 at 3). In the alternative, Halliburton moves to stay under Federal Rule of Civil Procedure 62(d) with a bond set no higher than the specific monetary award for past costs provided in the judgment, plus two years of interest. (*Id.* at 5–6). The Tremont Parties respond that if the monetary portion of the judgment is to be stayed, Halliburton ought to post a bond of at least $25 million, and that the nonmonetary relief portion should not be stayed. (Docket Entry No. 285 at 5, 22).

The parties filed briefs and this court granted Halliburton's motion for a hearing. Based on the motions and briefs, the arguments of counsel, and the applicable law, this court finds no basis to stay the judgment pending appeal; that Halliburton is required to post a supersedeas bond under Federal Rule of Civil Procedure 62(d) in the amount of $14,342,640.09 to stay enforcement of the arbitrators' monetary award confirmed in the judgment pending appeal; and that the nonmonetary relief granted by the arbitrators and confirmed in the judgment, described with particularity below, is not stayed. The reasons are set out below.

I.   **Analysis**

A.   **Supersedeas Bond Under Rule 62(d)**

Ordinarily a bond must be posted to stay execution of a judgment pending appeal. *See Poplar Grove Planting & Refining Co. v. Bache Halsey Stuart, Inc.*, 600 F.2d 1189, 1191

(5th Cir. 1979).  In *Poplar Grove*, the Fifth Circuit explained:

> The purpose of a supersedeas bond is to preserve the status quo while protecting the non-appealing party's rights pending appeal.  A judgment debtor who wishes to appeal may use the bond to avoid the risk of satisfying the judgment only to find that restitution is impossible after reversal on appeal.  At the same time, the bond secures the prevailing party against any loss sustained as a result of being forced to forgo execution on a judgment during the course of an ineffectual appeal.

*Poplar Grove*, 600 F.2d at 1190–91.  The Fifth Circuit looked to the predecessor of Rule 62(d)[1]—Rule 73(d)—and noted that the previous rule had directed that bond include "'the whole amount of the judgment remaining unsatisfied, costs of the appeal, interest, and damages for delay, unless the court after notice and hearing for good cause shown fixes a different amount or orders security other than the bond.'"  *Id.* at 1191 (quoting former FED. R. CIV. P. 73(d)).  The court explained that "[a]lthough the present rule does not by its terms precisely define the amount and conditions of a supersedeas bond, it has been read consistently with the earlier rule," and that "[t]he nature of the bond's dual protection role requires that these conditions normally be imposed."  *Id.* (citations omitted).  Noting that a supersedeas bond is a privilege extended to the judgment debtor, the court found that the

---

[1] Rule 62(d) provides:

**(d) Stay with Bond on Appeal**

> If an appeal is taken, the appellant may obtain a stay by supersedeas bond, except in an action described in Rule 62(a)(1) or (2).  The bond may be given upon or after filing the notice of appeal or after obtaining the order allowing the appeal.  The stay takes effect when the court approves the bond.

FED. R. CIV. P. 62(d).

burden is placed on the debtor to show why a court should depart from the usual requirement

of posting a full bond. *Id.* The court explained the showing a judgment debtor must make

in order to request deviation from the normal requirement of a full supersedeas bond as

follows:

> If a judgment debtor objectively demonstrates a present
> financial ability to facilely respond to a money judgment and
> presents to the court a financially secure plan for maintaining
> that same degree of solvency during the period of an appeal, the
> court may then exercise a discretion to substitute some form of
> guaranty of judgment responsibility for the usual supersedeas
> bond. Contrariwise, if the judgment debtor's present financial
> condition is such that the posting of a full bond would impose an
> undue financial burden, the court similarly is free to exercise a
> discretion to fashion some other arrangement for substitute
> security through an appropriate restraint on the judgment
> debtor's financial dealings, which would furnish equal
> protection to the judgment creditor.

*Id.* (citations omitted); *see also Ensersch Corp. v. Shand Morahan & Co., Inc.*, 918 F.2d 462,

464 (5th Cir. 1990) (quoting *Poplar Grove*, 600 F.2d at 1191). Factors relevant in

determining whether to waive a bond include:

> (1) the complexity of the collection process; (2) the amount of
> time required to obtain a judgment after it is affirmed on appeal;
> (3) the degree of confidence that the district court has in the
> ability of funds to pay the judgment; (4) whether the defendant's
> ability to pay the judgment is so plain that the cost of a bond
> would be a waste of money; and (5) whether the defendant is in
> such a precarious financial situation that the requirement to post
> a bond would place other creditors of the defendant in an
> insecure position.

*Chaney v. New Orleans Pub. Facility Mgmt., Inc.*, No. Civ. A. 96-4023, 1998 WL 43140, at

*2 (E.D. La. Feb. 3, 1998) (citing *Dillon v. City of Chicago*, 866 F.2d 902, 904–05 (7th Cir.

1988)); *see also Bollore, S.A. v. Import Warehouse, Inc.*, No. 3-99-CV-1196-R, 2004 WL 1873069, at *1 (N.D. Tex. Aug. 19, 2004) (citations omitted).

Considering these factors, Halliburton has not met the requirements for avoiding bond or substituting alternative security to obtain a stay of the monetary portion of the judgment. Halliburton has put forth evidence of its present financial ability to pay the judgment. The Tremont Parties contend that this evidence is not sufficient to dispense with a bond. Halliburton did show a present ability to pay the dollar amount the arbitrators found to be presently owing. The Tremont Parties contend that Halliburton has not sufficiently established a financially secure plan for maintaining the same degree of solvency during the appeal. Although Halliburton presented testimony and documentary evidence of its present financial condition, including Halliburton's currently available cash in the United States and certain real property, Halliburton presented insufficient evidence as to liabilities, debts, or encumbrances that might limit its future ability to respond to the judgment. Halliburton has not shown a financially secure plan for maintaining solvency during appeal, such that the cost of the bond is simply a "waste of money." Halliburton's concession that its financial condition makes it presently able to pay the monetary amounts that the arbitrators found presently owing precludes consideration of the alternative means for deviating from the standard requirement of a full supersedeas bond, which is available if the judgment debtor shows a financial inability to post a bond. *See Poplar Grove*, 600 F.2d at 1191.

Halliburton has failed to meet its burden of showing a basis to deviate from the general requirement of a bond. The amount of the bond is, at a minimum, the

5

$11,092,640.09 awarded in accordance with the arbitration awards to compensate the Tremont Parties for past costs incurred through April 30, 2008 in investigating and remediating the Site, legal expenses incurred through May 30, 2008, and interest through May 28, 2008.

The Tremont Parties also seek to include other amounts in the bond, including interest for the period the appeal is likely to take and the future investigation and remediation costs that are not yet determined but that under the arbitration awards confirmed by this court are Halliburton's responsibility.  In addition, the  parties dispute whether the stay extends to nonmonetary aspects of the judgment.  These issues are addressed below.

### B.    Additional Interest

Interest for the expected duration of the appeal is properly included in the bond.  *See Poplar Grove*, 600 F.2d at 1191.  The parties dispute how long the appeal will take and the amount of interest that should be included in the bond.  Halliburton contends that two years of interest is sufficient to protect the Tremont Parties' interests.  (Docket Entry No. 278 at 5).  The Tremont Parties contend that the bond should include interest for three or six years, depending on whether Halliburton continues to seek a stay of the appeal from the partial final judgment.  Halliburton moved to stay the appeal until all the claims pending in this court involving disputes between Halliburton and the Tremont Parties over responsibility for the environmental clean-up of properties other than the Site are resolved.  (*See* Docket Entry No. 285 at 20–21).  These claims were asserted recently.  Halliburton filed a motion asking the Fifth Circuit to abate the appeal.  The Fifth Circuit advised Halliburton that the motion was

not properly filed and no action would be taken until a different motion was filed.  (*See id.* at 20).  During the hearing on the stay and bond issues, counsel for Halliburton stated that whether to file another motion seeking to stay the appeal had not yet been decided.  Given the average time for an appeal and the possibility that the appeal could be stayed pending resolution of remaining claims, the supersedeas bond should include interest for three years from the date of judgment, approximately $2,000,000.

### C.    Costs of Appeal Included in Bond

The bond should also include security for costs on appeal.  *See Poplar Grove*, 600 F.2d at 1191.  The Tremont Parties estimate these costs to be $250,000.  The arbitrators ruled that the Tremont Parties were entitled to recover their fees and costs.  Halliburton has not contested the inclusion of costs on appeal in the bond and has not contested the Tremont Parties' estimate of those costs.  As a result, $250,000 will be added to the bond to cover the costs on appeal.

### D.    "Future Costs" Included in Bond

The Tremont Parties also requested that the bond include an amount to secure future remediation costs over the next six years.  (Docket Entry No. 285 at 18–19).  The awards and judgment require Halliburton to defend, indemnify, and hold harmless the Tremont Parties for any "Future Costs" incurred at the Site, as that term is defined in the parties' Cost Sharing Agreement.  (Docket Entry No. 277 at 2).  The awards and judgment specify that Tremont's recovery against Halliburton includes remediation and related costs Tremont incurs after April 30, 2008.  (*Id.* at 5).  The Tremont Parties have submitted an affidavit from their

7

environmental consultant estimating that remediation costs at the Site could be approximately $12 million over the next two to three years and $30–40 million over the next six years. (Docket Entry No. 285, Ex. I at ¶ 5–6).

Halliburton responds by stating that although it wants to stay enforcement of the part of the awards and judgment that obligate it, rather than the Tremont Parties, to pay these future costs, it has taken over the Site remediation and will be paying those costs "without prejudice to its appellate rights and subject to the appeal."  As a result, the risk that the Tremont Parties will have to pay future clean-up costs at the Site is minimal—unless the awards and judgment are reversed.  (Docket Entry No. 278 at 5).

A stay is available under Rule 62(d) only for monetary judgments.  *See United States v. Goltz*, Civ. Action No. SA-06-CA-503-XR, 2007 WL 295558, at *1 (W.D. Tex. Jan. 25, 2007) (noting that courts have restricted Rule 62(d)'s automatic stay to monetary judgments and that "[t]he applicability of Rule 62(d) turns on whether the judgment involved is monetary or nonmonetary, so long as the judgment is not otherwise excepted under Rule 62(a)") (citation omitted); *Freret Marine Supply v. M/V Enchanted Capri*, No. Civ. A. 00-3805, 2002 WL 31324042, at *3 (E.D. La. Oct. 16, 2002) ("'Courts have restricted the application of Rule 62(d)'s automatic stay to judgments for money because a bond may not adequately compensate a non-appealing party for loss incurred as a result of the stay of a non-money judgment.'") (quoting *Hebert v. Exxon Corp.*, 953 F.2d 936, 938 (5th Cir. 1992)); *accord Knutson v. AG Processing, Inc.*, 302 F. Supp. 2d 1023, 1033 n.3 (N.D. Iowa 2004) ("The posting of the supersedeas bond stays the enforcement of the money judgment only,

8

and has no effect on the enforcement of the injunctive and equitable relief ordered by the court.") (citation omitted).  Nonmonetary judgments are not automatically stayed but can be stayed in the district court's discretion if the moving party shows: "'(1) that it is likely to succeed on the merits; (2) that it would suffer irreparable injury if the stay were not granted; (3) that granting the stay would not substantially harm the other parties; and (4) that granting the stay would serve the public interest.'"  *Freret Marine Supply*, 2002 WL 31324042, at *4 (quoting *Nat'l Treasury Employees Union v. Von Raab*, 808 F.2d 1057, 1059 (5th Cir. 1987)); *see also Goltz*, 2007 WL 295558, at *3 (citation omitted).

In *Goltz*, the court faced a judgment that did not clearly fall within either the "monetary" or "nonmonetary" category.  The court noted that the four-factor standard "typically applies to a request to stay an injunction pending appeal."  *Goltz*, 2007 WL 295558, at *3 n.2.  The court engaged "in discretionary stay analysis because the Fifth Circuit has not clearly addressed whether a motion to stay an IRS foreclosure sale should be analyzed under Rule 62(d) (governing supersedeas stays) or Rule 62(c) (governing discretionary stays of injunctions)."  *Id.*  Similarly, in *Pharmacia Corp. v. Motor Carrier Servs. Corp.*, No. 04-3724 (GEB), 2008 WL 852255 (D.N.J. Mar. 28, 2008), the court considered a bond for a judgment that contained both monetary and nonmonetary aspects. In *Pharmacia*, the court had ordered the defendants to indemnify the plaintiffs for past and future costs relating to remediation at particular environmental sites.  *See Pharmacia*, 2008 WL 852255, at *1.  The court found that the judgment requiring payment of future remediation costs and related attorneys' fees was part of a monetary award subject to stay

under Rule 62(d), not 62(c).  *See id.* at *3 ("The Court acknowledges that its award of prospective costs and attorneys' fees overlaps in theory with both injunctive and monetary relief, but the Court will interpret its orders relating to damages and fees as orders 'to pay', rather than an order 'to do.'  Rule 62(c) does not allow for the stay of such monetary judgments.") (internal citation omitted).  Although the *Pharmacia* court found Rule 62(c) inapplicable, it determined that a stay could be entered under Rule 62(d).  *See id.* at *4.  The court noted that it had "not been given—and there may not exist—a clear way to ascertain the scope of the damages to come."  *Id.*  The court held: "In light of Defendants' existing liabilities and the likelihood of further clean-up costs in the near future, the Court holds, in its discretion that the monetary judgments awarded against the Stay Defendants will therefore be stayed under Rule 62(d) provided they submit a bond in the amount of $3,000,000."[2]  *Id.*

A contrary view of the status under Rule 62(d) of orders requiring future payments was expressed in dicta in *Robbins v. Pepsi-Cola Metropolitan Bottling Co.*, 637 F. Supp. 1014, 1018 n.15 (N.D. Ill. 1986), *aff'd*, 800 F.2d 641 (7th Cir. 1986).  In *Robbins*, the judgment required interim payments due under a pension plan in accordance with the Multiemployer Pension Plan Amendments Act, 29 U.S.C. §§ 1381 *et seq.*, as well as future monthly payments as they became due.  *Id.* at 1015.  The court determined that the requirements of the Multiemployer Pension Plan Amendments Act, which requires that an

---

[2] The court determined the bond amount based on its order to pay $448,431.22 in past clean-up costs, $469,360.24 in attorneys' fees, and the yet-to-be-determined prospective costs and fees.  *Pharmacia*, 2008 WL 852255, at *4.

employer "make interim payments 'notwithstanding any request for review or appeal,'" *id.* at 1017 (quoting 29 U.S.C. § 1399(c)(2)), and that payments be made "'until the arbitrator issues a final decision,'" *id.* (quoting 29 U.S.C. §1401(d)), superseded the Rule 62(d) requirements.  But the court noted that "if a judgment includes both a money award and a grant or denial of an injunction, a supersedeas bond usually stays only the monetary award, and not the portion of the judgment that awards prospective relief." *Id.* at 1018 n.15 (citation omitted).  The court explained that "even *if* Rule 62(d) applied to the May 23rd judgment—which it does not—it would have applied only to the portion of the order directing payment of the overdue interim assessments.  The portion of the order requiring prospective payments would have been governed by Rule 62(c)." *Id.*  The court also rejected the applicability of a distinction between "orders to do" under Rule 62(c) and "orders to pay" under Rule 62(d). *Robbins*, 637 F. Supp. at 1019 n.16.  The court explained that it did "not dispute this general dividing line for determining the availability of an automatic stay pending appeal," but found the "distinction . . . inapplicable to situations in which Congress has predetermined that an appellant is not entitled to an automatic stay of his money judgment pending appeal." *Id.*  The court concluded that "the distinction between orders to do and orders to pay set forth in *Donovan* [*v. Fall River Foundry Co., Inc.*, 696 F.2d 524 (7th Cir. 1982)] does not control the court's conclusion with respect to the availability of Rule 62(d) to stay the interim payments order." *Robbins*, 637 F. Supp. at 1019 n.16.

This case is factually similar to *Pharmacia*, which also addressed whether to include the likely amount of future environmental clean-up costs in a bond to stay a judgment

requiring payment of those costs. As in *Pharmacia*, the portion of the awards and judgment requiring the party seeking the stay to pay future remediation costs at the site at issue is more like an order to pay than an order to do. The portion of the awards and judgment requiring Halliburton to defend, indemnify, and hold harmless the Tremont Parties for Future Costs and to reimburse Tremont for costs incurred after April 30, 2008 is properly analyzed under Rule 62(d).

Under that rule, this portion of the judgment is automatically stayed if Halliburton provides adequate security to protect the Tremont Parties for the risk that Halliburton will not pay these Future Costs or will delay in reimbursing the Tremont Parties if they pay some or all of the Future Costs. On the record before this court, that risk to the Tremont Parties is relatively low. Halliburton has provided assurances, in open court, that it has assumed the responsibility for future remediation work and costs at the Site. (Docket Entry No. 278 at 5 ("Additionally, and without prejudice to its appellate rights and subject to the appeal, Plaintiffs have taken over the Malvern Site remediation and are currently paying all costs associated with its remediation.")). The Tremont Parties' counsel has expressed concern that Halliburton's current proposal for remediation at the Site may be rejected by the Arkansas Department of Environmental Quality ("ADEQ") and that a more expensive remediation plan may ultimately be required. Halliburton's counsel stated in open court that although Halliburton reserved its right to contest proposed remediation plans and reserved its appellate rights, it would not seek payment for or involvement in the remediation work at the Site from the Tremont Parties.

The Tremont Parties' counsel also expressed concern about a bond these parties had to post in Arkansas to cover the remediation work at the Site. Halliburton's counsel contends that the Arkansas bond was considered by the arbitration panel, included in the awards, and subsequently encompassed in this court's partial final judgment. Halliburton contends that if the supersedeas bond posted in this case covers the monetary award in the judgment, it will cover the amount of the Arkansas bond posted by the Tremont Parties.

"'The purpose of a supersedeas bond is to secure the appellees from a loss resulting from the stay of execution . . . .'" *Hunt v. Check Recovery Sys., Inc.*, No. C05-04993 MJJ, 2008 WL 754991, at *1 (N.D. Cal. March 21, 2008) (quoting *Rachel v. Banana Republic, Inc.*, 831 F.2d 1503, 1505 n.1 (9th Cir. 1987)). A court has discretionary authority in determining the bond amount. *See id.* ("Pursuant to . . . Rule [62(d)], '[d]istrict courts have inherent discretionary authority in setting supersedeas bonds[.]'") (quoting *Rachel*, 831 F.2d at 1505 n.1). Halliburton has represented to this court that it has taken over remediation costs at the Site and that it will work with the ADEQ in the future remediation work at the Site. As a result, Halliburton is correct in its statement that "there is little or no risk that during the appeal the Tremont Parties will be left holding the bag . . . ." (Docket Entry No. 278 at 5). Nonetheless, the Tremont Parties are entitled to some security to protect them in the event that Halliburton defaults on its promise to perform the required future remediation work at the Site and not seek reimbursement from the Tremont Parties for future remediation costs at the Site. Considering both Halliburton's promise to assume responsibility for the future remediation work and costs at the Site and the Tremont Parties' interest in assuring that they

13

will not be held responsible for those future costs, this court determines in its discretion that an additional $1 million should be included in the bond to secure Future Costs at the Site.

### E. Claims of Third Parties Not Included in Bond

The Tremont Parties have also requested that the bond include at least $2 million to cover third-party claims with respect to the Site, including those of Georgia-Pacific Corporation and Milwhite Inc. (Docket Entry No. 285 at 19). The portion of the judgment requiring indemnification for claims of third-parties is also a monetary award subject to Rule 62(d). *See Pharmacia*, 2008 WL 852255, at *2–3. A stay of the portion of the judgment relating to indemnification for third-party claims is appropriate at this time. Georgia-Pacific's counsel has informed this court that the parties will be mediating the claims involving Georgia-Pacific and Milwhite next month. Given the possibility that these additional claims may be resolved in the near future, no additional bond amount is needed to secure the portion of the judgment relating to indemnity for third-party claims. *See Fed. Prescription Serv., Inc. v. Am. Pharm. Assoc.*, 636 F.2d 755, 760–61 (D.C. Cir. 1980) ("[T]he district court in its discretion may order partially secured or unsecured stays if they do not unduly endanger the judgment creditor's interest in ultimate recovery."); *see also Bollore, S.A. v. Import Warehouse, Inc.*, No. 3-99-CV-1196-R, 2004 WL 1873069, at *1 (N.D. Tex. Aug. 19, 2004) ("Although a district court has discretion to stay the execution of judgment without a supersedeas bond or to reduce the amount of bond required for such a stay, the burden is on the moving party to objectively demonstrate the reasons for such a departure.") (citing *Poplar Grove*, 600 F.2d at 1191).

14

### F.     Stay of Nonmonetary Aspects of Judgment

The Tremont Parties have also requested that the nonmonetary portion of the judgment, including Halliburton's responsibility to recognize that HESI is the owner of certain property at the Site, not be stayed.  (*See* Docket Entry No. 285 at 22).  The Tremont Parties contend that they should be permitted to register and record the judgment "in Hot Springs County, Arkansas and the Districts of Arkansas and take all further efforts to ascertain that there is no remaining ownership interest in the property in the names of any of the Tremont Parties and that the Hot Springs County and Arkansas State records reflect that Judgment Debtors are the proper owners and responsible for all taxes and any injuries that might happen on the property."  (*Id.*).

Nonmonetary judgments may be stayed in the court's discretion pursuant to Rule 62(c).  *See Knutson v. AG Processing, Inc.*, 302 F. Supp. 2d 1023, 1033 (N.D. Iowa 2004) ("The suspension of equitable or injunctive relief ordered by a district court during the pendency of an appeal is authorized by Federal Rule of Civil Procedure 62(c).  Rule 62(c) codifies the inherent power of courts to make whatever order is deemed necessary to preserve the status quo and to ensure the effectiveness of the eventual judgment.") (citations, internal quotation marks, and footnote omitted).  The factors relevant to whether a stay should issue under Rule 62(c) are:

> 1. Whether the stay applicant has made a strong showing that he is likely to succeed on the merits;
>
> 2. Whether the applicant will be irreparably injured absent a stay;

      3. Whether issuance of the stay will substantially injure the other parties interested in the proceeding; and

      4. Where the public interest lies.

*Knutson*, 302 F. Supp. 2d at 1034 (quoting *Hilton v. Braunskill*, 481 U.S. 770 (1987)) (additional citations omitted).  Halliburton has not met this standard for discretionary stays of nonmonetary judgments.  It would be difficult for Halliburton to show a strong likelihood of success on the merits given the narrow judicial review of arbitration awards.  Although Halliburton's counsel raised the concern that changing deed records at this stage could require later correction if the arbitration awards and judgment were reversed, this does not amount to irreparable injury.  In comparison, the Tremont Parties would be substantially injured by an inability to record the judgment and change deed records consistent with the judgment until after the appeal is resolved.  Neither party has addressed the public interest factor, but the record does not show that the public interest would be served by staying this nonmonetary portion of the judgment.  Halliburton has not made the showing required to stay the nonmonetary portion of the judgment.  The fact that portions of the judgment are stayed does not preclude the Tremont Parties from recording the judgment.  *Cf. In re The Rainbow Trust*, 216 B.R. 77, 86 (B.A.P. 2d Cir. 1997) (finding that the automatic stay on judgment imposed by Vermont law did not prohibit recording the judgment).  The Tremont Parties are entitled to obtain an abstract of judgment and to record the judgment.

## G.      Findings Pursuant to TEX. PROP. CODE 52.0011(a)

      In response to the Tremont Parties' request for issuance of an abstract of judgment,

16

(Docket Entry No. 287, Ex. A), Halliburton has asked this court to "issue findings in accordance with the Texas Property Code to invalidate any attempts by the Tremont Parties to place liens upon the Plaintiffs' real property." (Docket Entry No. 287 at 2).  The relevant portion of the Texas Property Code provides:

> (a) A first or subsequent abstract of a judgment rendered by a court against a defendant, when it is recorded and indexed under this chapter, does not constitute a lien on the real property of the defendant if:
>
>> (1) the defendant has posted security as provided by law or is excused by law from posting security; and
>>
>> (2) the court finds that the creation of the lien would not substantially increase the degree to which a judgment creditor's recovery under the judgment would be secured when balanced against the costs to the defendant after the exhaustion of all appellate remedies.  A certified copy of the finding of the court must be recorded in the real property records in each county in which the abstract of judgment or a certified copy of the judgment is filed in the abstract of judgment records.

TEX. PROP. CODE § 52.0011(a) (2007).  The parties have not cited, and this court has not uncovered, cases substantively applying or analyzing the portion of this statute relating to findings that a judgment should not constitute a lien.  But the record supports the finding that because Halliburton will be posting a bond or otherwise securing the monetary portion of the judgment, including future remediation costs, a lien on Halliburton's property is not necessary to protect the Tremont Parties' interests.  In accordance with Texas Property Code §52.0011(a)(2), this court finds that creation of a lien would not substantially increase the degree to which the Tremont Parties' recovery under the judgment issued on July 2, 2008

17

would be secured when balanced against the costs to Halliburton after the exhaustion of all appellate remedies.

### H.    Postjudgment Discovery

The Tremont Parties have asked for discovery on Halliburton's financial condition. (Docket Entry No. 285 at 22–23). Halliburton's counsel requested an opportunity to respond. Any dispute that the parties may have with respect to this additional discovery is not resolved by this order.

## II.    Conclusion and Order

The monetary portions of the judgment entered on July 2, 2008 will be stayed upon Halliburton's posting of a bond in the amount of $14,342,640.09, which covers the monetary award stated in the judgment, interest during the appeal, costs on appeal, and compensation for potential Future Costs at the Site. The nonmonetary portion of the judgment is not stayed. The requested abstract of judgment will issue from the clerk's office. The Tremont Parties are not prohibited from recording the judgment. This court finds that creation of a lien would not substantially increase the degree to which the Tremont Parties' recovery under the judgment issued on July 2, 2008 would be secured when balanced against the costs to Halliburton after the exhaustion of all appellate remedies.

SIGNED on July 16, 2008, at Houston, Texas.

Lee H. Rosenthal
United States District Judge

18