**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| HALLIBURTON ENERGY SERVICES, INC., *et al.*, | § § § | |
| Plaintiffs, | § § | |
| VS. | § § | CIVIL ACTION NO. H-05-4160 |
| NL INDUSTRIES, *et al.*, | § § | |
| Defendants. | § | |

| | | |
|---|---|---|
| TRE MANAGEMENT COMPANY, | § § | |
| Plaintiffs, | § § | |
| VS. | § § | CIVIL ACTION NO. H-06-3504 |
| GEORGIA-PACIFIC CORPORATION, *et al.*, | § § § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

On July 2, 2008, this court issued a partial final judgment in favor of the Tremont Parties,[1] and against Halliburton Energy Services, Inc. ("HESI") and DII Industries, Inc. ("DII") (together, "Halliburton"), with respect to claims resolved in arbitration about the past and future costs of investigating and remediating environmental contamination at a site near Magnet Cove, Arkansas and Malvern, Arkansas (the "Site"). This court stayed the monetary portion of the judgment at Halliburton's request, and required Halliburton to post a supersedeas bond. The partial final

---

[1] The "Tremont Parties" include TRE Holding Company, TRE Management Company ("TRE Management"), NL Industries, Inc., and Tremont LLC.

judgment was subsequently affirmed by the Fifth Circuit.  No further appeals have been taken and the judgment is final.  Halliburton has filed a motion to release the supersedeas bond.  (Docket Entry No. 365).  Based on the motion and briefs, the arguments of counsel, and the applicable law, this court grants Halliburton's request to release the bond.

## I.    Background

On January 27, 2009, Halliburton paid the Tremont Parties the full amount due at that time—$11,797,149.75.  (Docket Entry No. 365 at 2).  Halliburton has agreed to release the Tremont Parties from the obligations the Tremont Parties previously agreed to assume at the Site.  (*Id.* at 2–3).  According to Halliburton, it has undertaken the Tremont Parties' obligation at the Site and has provided a revised financial assurance letter to the Arkansas Department of Environmental Quality (the "ADEQ"), and the form of guarantee offered by Halliburton has been approved by the ADEQ.  (*Id.* at 3).  Halliburton argues that because the monetary portion of the judgment and the obligation for future financial assurance have been satisfied, the bond should be released.  (*Id.*).

The Tremont Parties oppose releasing the bond and request that additional or substitute security of $25 million be provided by Halliburton to secure future costs at the Site.  (Docket Entry No. 367 at 1, 4–5).  The Tremont Parties argue that Halliburton has not provided any defense for the Tremont Parties from all government and third-party claims, including those of Georgia-Pacific Corporation and Milwhite Inc.  (*Id.* at 2).  The Tremont Parties focus on the fact that Halliburton Company, Halliburton's parent corporation, has moved its headquarters to Dubai, which the Tremont Parties assert could make future collection from Halliburton difficult, on the fact that Halliburton Company has taken on liabilities as a result of one of its subsidiaries in Nigeria making improper payments, and on the fact that Halliburton Company has filed for bankruptcy protection

for Dresser Industries, Inc., an entity that was involved at the Site. (*Id.* at 6–7). The Tremont Parties also submitted a supplement in which they state that HESI contributed shares of stock to a subsidiary and argue that this raises questions as to whether Halliburton is diverting assets. (Docket Entry No. 370 at 1–2). The Tremont Parties also point to a letter from the ADEQ, which they assert raises questions as to whether the ADEQ will accept a parent guarantee from Halliburton Company. (*Id.* at 2). However, that letter asks that Halliburton comply with certain requests, and concludes by stating that "[i]f Halliburton addresses these comments then its financial assurance submittal should be approved." (*Id.*, Ex. B at 2). At the hearing on Halliburton's motion, this court denied Tremont's request for an increase in the bond or other security without prejudice.[2]

In an August 7, 2009 status report, Halliburton stated that it had paid all fees and costs owed by HESI under the judgment, with the exception of approximately $15,000. (Docket Entry No. 372 at 1). Halliburton explained that it was waiting for an itemization of the legal costs and was checking other calculations. (*Id.*). Halliburton also reported that on August 3, 2009, HESI made a submission to the ADEQ that would enable it to release the Tremont Parties' bond. (*Id.*). At the time of this status report, Halliburton asked for a reduction in its bond to $50,000, which it asserted would be more than sufficient to cover the outstanding $15,000 and the outstanding bond premium. (*Id.* at 2).

Georgia-Pacific—which was not a party to the arbitration—filed a response to Halliburton's status report, arguing that Halliburton should sign a stipulation agreeing to undertake the liabilities

---

[2] The parties initially also disagreed regarding the proper form of a deed to transfer the property at the Site to Halliburton, but at the hearing on Halliburton's motion, Halliburton's counsel indicated that the Tremont Parties had recorded a deed in Arkansas and that Halliburton's counsel probably would not be taking any further action on that matter. As a result, the dispute regarding the proper form of deed appears to be moot.

of National Lead under the leases between Georgia-Pacific and National Lead at issue in this case. (Docket Entry No. 373). Halliburton responded to Georgia-Pacific's statement by noting that it had not yet determined whether it would sign Georgia-Pacific's proposed stipulation, but that because this court noted the possibility that the leases at issue might not cover liability under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), Halliburton was assessing the propriety of entering the stipulation. (Docket Entry No. 376 at 2).

The Tremont Parties responded to Halliburton's status report by arguing that Halliburton still had not replaced the Tremont Parties' bond with the ADEQ and that Halliburton still needed to pay more than $15,000 in unpaid invoices. (Docket Entry No. 374 at 1–3). The Tremont Parties also argued that the bond should not be reduced because Halliburton cannot satisfy all future costs at the Site. (*Id.* at 3).

As required by this court, Halliburton filed another status report on March 19, 2010. (Docket Entry No. 403). Halliburton reports that Halliburton Company, on behalf of HESI, has issued a corporate guarantee as financial assurance for the operation and maintenance of the water treatment system at the Site, and that the ADEQ has released TRE Management's letter of credit. (*Id.* at 1). Halliburton also reports that the ADEQ has agreed to release TRE Management from a 2000 Administrative Settlement Agreement, and that the parties are currently discussing the proposed release documentation. (*Id.*). Halliburton states that when it submitted a feasibility study for the Site to the ADEQ, which identified a range of possible remedial alternatives, it specifically acknowledged that TRE Management withdrew from the project on April 10, 2008. (*Id.* at 2). Halliburton emphasizes that "[a]s between the TRE Management-related parties (including Tremont and NL Industries) and HESI, HESI is taking full financial responsibility of the Site remediation."

4

(*Id.*).  Halliburton also states that all fees and costs it owes have been paid, and that it is currently reviewing an additional $40,000 in legal fees that the Tremont Parties recently submitted.  (*Id.*).  At a hearing in the related case, Case No. 08-1063, Halliburton's counsel indicated that Halliburton had agreed to pay these outstanding fees, subject to not waiving arguments on any future dispute, and indicated that the bills would be paid within the next two weeks.  Finally, Halliburton notes that there was an accident in which Steven Lindsey allegedly drowned at the pit lake at the Site on May 19, 2008, but asserts that this matter is outside the scope of the arbitration award and is currently the subject of a motion for summary judgment in the related case.  (Docket Entry No. 403 at 2).  Halliburton requests that the bond be released "[s]ince the money judgment part of the Judgment has been satisfied, and HESI is otherwise satisfying its obligations under the Judgment."  (*Id.*).

The Tremont Parties argue that Halliburton still has not hired independent counsel to defend the claims of Georgia-Pacific and Milwhite, and has failed or refused to agree to do so in writing. (Docket Entry No. 404 at 1).  The Tremont Parties assert that as a result, they have needed to remain involved in this litigation and to incur legal expenses.  (*Id.*).  The Tremont Parties note that Halliburton has not paid the legal bills and expenses that the Tremont Parties have submitted for reimbursement since December 1, 2009, and that Halliburton now owes over $36,898.01.  (*Id.* at 1–2).  The Tremont Parties also assert that Halliburton has not yet had TRE Management removed from the 2000 Administrative Settlement with the ADEQ, and that as a result, the Tremont Parties have needed to engage counsel in Arkansas to attempt to have TRE Management removed from the agreement.  (*Id.* at 2).  The Tremont Parties note that Halliburton has changed its estimates as to the amount of future costs, (*see id.*), but the new estimate ($17 million) is significantly less than a prior estimate ($390 million).  The Tremont Parties request that the supersedeas bond remain in place so

5

that they have protection for future cleanup costs.  (*Id.*).

## II.    Analysis

Under Rule 62(d), "[i]f an appeal is taken, the appellant may obtain a stay by supersedeas bond . . . ."  F<small>ED</small>. R. C<small>IV</small>. P. 62(d).  "The purpose of a supersedeas bond is to preserve the status quo while protecting the non-appealing party's rights *pending appeal*."  *Poplar Grove Planting & Refining Co. v. Bache Halsey Stuart, Inc.*, 600 F.2d 1189, 1190–91 (5th Cir. 1979) (emphasis added).  "[T]he bond secures the prevailing party against any loss sustained as a result of being forced to forgo execution on a judgment during the course of an ineffectual appeal."  *Id.* at 1191.  "Courts release supersedeas bonds when the bond has served its purpose and no outstanding judgment remains."  *Goss Int'l Corp. v. Tokyo Kikai Seisakusho, Ltd.*, No. 00-CV-35-LRR, 2006 WL 4757279, at *3 (N.D. Iowa Aug. 9, 2006) (citations omitted).  "A supersedeas bond posted for a stay of execution of judgment should be released once all appeals are exhausted, the stay has been lifted and full payment has been made."  *Id.* (citation omitted).  At least one court has concluded that "absent unambiguous language in the supersedeas bond to the contrary, an appellant is liable under a bond only until the court of appeals has issued its mandate in a case or stayed its mandate pending application for certiorari."  *Water Techs. Corp. v. Calco, Ltd.*, 694 F. Supp. 1328, 1331 (N.D. Ill. 1988) (citation omitted).

Halliburton's supersedeas bond has served its purpose of maintaining the status quo during the appeal and there is no longer a reason for it to remain in place.  Although it may sometimes be appropriate to maintain a supersedeas bond after appeal when there are some outstanding amounts due, *see Wilmer v. Bd. of County Comm'rs of Leavenworth County, Kan.*, 916 F. Supp. 1079, 1081 (D. Kan. 1996) (holding that because the defendant remained liable for interest and costs, the court

would not release the supersedeas bond until those amounts were paid), *aff'd*, No. 96-3074, 103 F.3d 146, 1996 WL 699718 (10th Cir. Dec. 6, 1996) (unpublished table decision), the outstanding exposures at the Site are either nearly resolved or beyond the scope of the monetary award that the bond is securing.

Halliburton has paid the monetary portion of the judgment and has indicated that it will pay the outstanding amounts submitted by the Tremont Parties within the next two weeks.

Halliburton has also taken steps to ensure that the Tremont Parties will not be held responsible for future cleanup costs at the Site. When this court entered the order requiring the supersedeas bond, it noted that the risk that the Tremont Parties would have to pay future cleanup costs at the Site was relatively low because Halliburton had provided assurances, in open court, that it had assumed responsibility for future remediation work and costs at the Site and would not seek payment for or involvement in the remediation work at the Site from the Tremont Parties. The risk that the Tremont Parties will have to pay future cleanup costs at the Site is even lower now that the judgment confirming the awards has been affirmed by the Fifth Circuit. Halliburton has replaced the Tremont Parties' letter of credit with the ADEQ, and the ADEQ has agreed to remove TRE Management from the 2000 Administrative Settlement. The small possibility that the Tremont Parties could be held responsible for future cleanup costs at the Site does not warrant maintaining the supersedeas bond, which was meant to maintain the status quo pending appeal, not pending final cleanup of the Site.

The claims of third parties also do not require maintaining the supersedeas bond. When this court entered the order requiring the bond, it did not include the claims of third parties in the bond. This court noted at that time that the claims involving Georgia-Pacific and Milwhite were being

7

mediated in the near future, and concluded that given the possibility that those claims might be resolved soon, no additional bond amount was needed.  Although the mediation mentioned in this court's order requiring the supersedeas bond did not result in settlement, since that time certain motions for partial summary judgment on some of the claims involving Georgia-Pacific and Milwhite have been resolved and the parties have participated in mediation.  The parties are set to continue mediation next month.  Although the Tremont Parties contend that Halliburton has not obtained independent counsel for the claims of Georgia-Pacific and Milwhite and that the Tremont Parties have been required to remain involved in this litigation as a result, it appears that the Tremont Parties have been submitting legal fees incurred in this case to Halliburton for reimbursement.  Given the fact that the claims involving Georgia-Pacific and Milwhite may be resolved in the near future, those claims do not provide a basis for maintaining the supersedeas bond.[3]

The Tremont Parties have also asserted that they have needed to retain Arkansas counsel to have TRE Management removed from the 2000 Administrative Settlement, but, in addition to the fact that the Tremont Parties seem to be submitting these legal bills to Halliburton for reimbursement, Halliburton has represented that the ADEQ has agreed to remove TRE Management from the settlement and that the parties are working out the paperwork.  The supersedeas bond does not need to remain in place to ensure that TRE Management is removed from the 2000 Administrative Settlement.

---

[3]  Because of the ongoing attempts to mediate, Georgia-Pacific's request that Halliburton "either sign the proposed stipulation, or explain to the Court on the record precisely how they have complied with the portion of the arbitration award and judgment concerning the Georgia-Pacific leases, or concede that they have not," need not be resolved at this time.  The fact that Halliburton has not agreed to Georgia-Pacific's stipulation is not a reason to maintain the supersedeas bond.

**III.     Conclusion and Order**

The supersedeas bond has fulfilled its purpose and the appeal has been resolved.

Halliburton's request to release the supersedeas bond, (Docket Entry No. 365), is granted.

SIGNED on March 31, 2010, at Houston, Texas.

Lee H. Rosenthal
United States District Judge